## WAYCROSS AIR–LINE RAILROAD COMPANY *v.* OFFERMAN AND WESTERN RAILROAD COMPANY.

1. In passing upon exceptions of law to rulings alleged to have been made by an auditor, the court can not look to the exceptions alone to ascertain what those rulings were. The grounds upon which the exceptions are based must be verified by reference to the auditor's report; and if the report affords no means of verification, the exceptions can not be considered, unless otherwise certified by the auditor.
2. The damages found by the auditor were such as were within the contemplation of the parties to the bond sued on, at the time it was executed, and were covered by such bond.
3. In a suit upon a supersedeas bond, the question as to what damages were within the contemplation of the parties at the time the bond was executed is one of law, to be determined by the court from the bond itself and the circumstances under which it was given. The testimony of persons who signed the bond as sureties, as to the nature of the damages which they understood the bond would cover, is irrelevant, and, even though admitted, can not legally affect the construction to be given to the contract by the court.
4. The evidence demanded a finding by the auditor in favor of the plaintiff, and, upon the trial in the superior court, the judge did not err in directing the jury to find against exceptions of fact which alleged that the evidence was not sufficient to support such a finding.

Submitted April 6,—Decided May 11, 1904.

Exceptions to auditor's report. Before Judge Parker. Ware superior court. August 11, 1903.

*J. L. Sweat* and *Leon A. Wilson*, for plaintiff in error.
*W. E. Kay* and *John C. McDonald*, contra.

FISH, P. J.   The Waycross Air-Line Railroad Company brought
a petition for injunction against the Offerman and Western Rail-
road Company, to prevent the defendant company from construct-
ing its road across the right of way and tracks of the petitioner
near Nicholls, Ga., under condemnation proceedings or otherwise,
for the purpose of reaching a depot site at or near Nicholls.   The
injunction prayed for was, at an interlocutory hearing, refused,
and the petitioner sued out a writ of error to this court, and, to
obtain a restraining order preserving the status until the judgment
refusing the injunction could be reviewed, gave a supersedeas bond
with sureties, conditioned to pay, in the event the judgment should
be affirmed by the Supreme Court, the Offerman and Western
Railroad Company all damages resulting from the supersedeas of
the judgment and the delay occasioned by bringing the case to
this court.   The judgment of the lower court was affirmed by
this court.   *Waycross R. Co.* v. *Offerman R. Co.*, 109 *Ga.* 827.
Subsequently the Offerman and Western Railroad Company
brought suit upon this bond against the principal and sureties
thereon, for damages which it alleged it had sustained in conse-
quence of the supersedeas and the delay occasioned by suing out
the writ of error to the Supreme Court.   The defendants demurred
to the petition in the damage suit, the demurrer was overruled,
and the judgment overruling the demurrer, upon a review thereof,
was affirmed by the Supreme Court.   *Waycross R. Co.* v. *Offer-
man R. Co.*, 114 *Ga.* 727.   The case was referred to an audi-
tor in the superior court, who found in favor of the plaintiff for
a designated amount.   The defendants filed certain exceptions of
law and certain exceptions of fact to the auditor's report.   The
case came on for trial in the superior court upon the report of the
auditor and these exceptions.   A jury was empaneled to try the
issues of fact, and, after the evidence was all in and both sides
had announced closed, the judge passed an order overruling the
exceptions of law.   " Counsel for defendants thereupon stated to
the court, in open court, that no objection was urged to the cor-
rectness of the amount found by the auditor, in the event the
plaintiff was entitled to recover at all; and thereupon the court
directed the jury to find verdicts in favor of the plaintiff and
against the defendants upon their five grounds of exception of
fact, and a verdict for the plaintiff and against the defendants [for

the amount found by the auditor] with interest and costs;" and when this was done judgment in accordance therewith was rendered by the court. The defendants excepted pendente lite to the overruling of the exceptions of law and to the direction of the verdicts upon the exceptions of fact, and subsequently made a motion for a new trial, which was overruled, and they excepted.

1. Some of the exceptions of law alleged that the auditor erred in overruling designated objections of the defendants to certain portions of the testimony of a witness named Stillwell; another that he erred in overruling an objection to the testimony of a witness named Gray, and another that he erred in sustaining the objections of the plaintiff to the testimony of a witness named Bonnyman. While it does not seem to us that either of these exceptions was meritorious, we can not rule upon either of the questions raised by them, because, as the record comes before us, there is no way of ascertaining by the report of the auditor whether he made the rulings complained of or not. In the report the auditor says: "I overrule the objections, pages 2, 3, 4, 5, 10, and 11 of the brief of evidence, by defendants' counsel, to the testimony of the witness W. B. Stillwell, upon all the grounds of objections thereto." He also states: "I overrule the objection offered by defendants' counsel to the testimony of J. F. Gray, on page 12 of the brief of evidence;" and, "I sustain the objection, upon the grounds therein stated, of counsel for plaintiff to the testimony of Alex. Bonnyman, on pages 31 and 38, brief of evidence in this case." In the brief of evidence contained in the record there is not a single objection stated or noted to any portion of the testimony of either of these witnesses, nor the slightest indication that any objection was made, nor is this brief of evidence itself verified by the auditor as the evidence which was introduced before him. Presuming that this is the brief of evidence to which the auditor refers in the above quotations from his report, there is nothing in it, or accompanying it, which shows to this court what any objection to the testimony of either of these witnesses, which he overruled or sustained, was. It is manifest that neither the superior court nor this court, in passing upon exceptions to alleged rulings made by an auditor, can look to the exceptions themselves to ascertain what those rulings were. The grounds upon which the exceptions are based must be verified by reference to the audi-

tor's report; and if the report affords no means of verification, the exceptions can not be considered.    If a party excepts to alleged rulings made by an auditor, and the report fails to show whether such rulings were made, the excepting party, if he desires to save his exceptions, should take steps to have them certified as provided in the Civil Code, § 4590 et seq.    As these exceptions of law come before us, they are like a motion for a new trial none of the grounds of which are verified by the trial judge; and it is well settled that an unverified ground can not be considered by a reviewing court.

2. One of the exceptions of law was:    "The auditor erred, as a matter of law, in finding that the defendants who executed the bond sued upon had in contemplation, at the time of its execution and delivery, damages of a nature claimed and set up by the plaintiff in its petition and allowed by the auditor in his finding." The auditor found "that it is reasonable to suppose that the parties to this bond sued on contemplated damages of the nature sued upon consequent upon its breach."    The damages claimed in the suit and found by the auditor were damages sustained by the plaintiff in consequence of the loss of freights which it, under a contract with the Southern Pine Company, would have received, during the period covered by the supersedeas bond, if it had been allowed to complete its road to the point where such freights would have been delivered to it.    The obligors in the bond bound themselves to pay to the obligee " all damages which the Offerman & Western Railroad Company should suffer by reason of its being restrained from condemning a right of way across the Waycross Air-Line Railroad at Nicholls, from the time when said crossing could have been condemned up to the time when said crossing should be actually put in and the road put in operation, provided the judgment refusing the injunction should be affirmed by the Supreme Court."    We see no error in the finding of the auditor complained of.    We agree with him "that it is reasonable to suppose that the parties to this bond sued on contemplated damages of the nature" of those sued for in this case.    It seems to us that this would be a natural supposition in any case in which a railroad company, engaged in constructing a railroad for the purpose of hauling freight as a common carrier, was prevented from constructing its road to a given point where it would receive

freights, and bond was given to indemnify it for damages which it should sustain by reason of being prevented from constructing its road to such point, unless the circumstances at the time the bond was given were such as to preclude such a supposition. The circumstances at the time this bond was given, as shown by the evidence, were such as to render this supposition not only natural but inevitable. The railroad of the plaintiff was being constructed for the purpose of hauling freight and especially for the purpose of hauling lumber, etc., from the plant of the Southern Pine Company at Nicholls, and this the obligors in this bond, as the record shows, knew perfectly well; and when they bound themselves to pay all damages which the railroad company should sustain by reason of being prevented, for a designated period, from extending its road to a point where such freights would be received by it, they certainly obligated themselves to pay damages arising from the loss of the profits which would have been made by the hauling of such freights. When this case was before this court on a previous occasion, upon a bill of exceptions sued out by the defendants, complaining of the overruling of a demurrer to the plaintiff's petition, Mr. Justice Cobb, speaking for the court, said: "A further contention of the plaintiffs in error was that the demurrer should have been sustained, for the reason that the damages claimed were too remote to be the basis of a legal recovery. We do not think that under the allegations of the petition this objection is well founded. When all the allegations of the petition are taken together, it is clearly shown that the very damages which are now sought to be recovered were those which were in the actual contemplation of the parties when the contract was entered into, and in cases of this character it is well settled that such damages, even though to some extent contingent and remote, may be recovered." 114 *Ga.* 731 (3). It is sufficient now to say that the evidence on the trial before the auditor fully sustained the allegations of the plaintiff's petition. The pleadings in the injunction case in which this bond was given were introduced by the plaintiff. One has but to read them to see that damages from the loss of freight were in contemplation of the parties when this bond was executed. Those pleadings clearly show that the litigation between the two railroad companies was, at bottom, a contest over freights, and mainly over the large volume of freight

traffic to be obtained from the Southern Pine Company at Nicholls; and that the petitioner knew that the relations between the Offerman and Western Railroad Company and the Southern Pine Company were so close and intimate that, other things being equal, this railroad company, if allowed to complete its line to the mill of the Pine Company, would secure practically all of this freight. The petitioner itself charged that the stock in this railroad company was owned and controlled by the Pine Company, or its stockholders, and that the connection between the two companies was such as to make the two corporations practically and in effect the same. In our opinion, there can be no reasonable doubt, from the bond and the evidence as to the circumstances under which it was executed, that it contemplated and covered all provable damages occasioned by the loss of freights the hauling of which the obligee in the bond would have obtained but for the interposition of the supersedeas.

3. The question as to what damages were contemplated by, the parties when this bond was executed was one of law, to be determined from the written contract and the circumstances under which it was executed; and the testimony of persons who, as sureties, signed the bond, as to what they privately understood, among themselves when they signed it, in reference to the nature of the damages which it would cover, was irrelevant, and, although admitted by the auditor, could not legally affect the construction to be given to the contract by the auditor or the court.

4. It was admitted by the defendants that if the plaintiff was entitled to recover anything at all, it was entitled to recover the amount found by the auditor. But certain exceptions to the report presented the question whether the evidence was sufficient to sustain a finding for the plaintiff for any amount at all. These exceptions were based upon two contentions; one of which was, that the evidence showed that the plaintiff did not own the Offerman railroad, without which it had no outlet for freight from Nicholls, during the time the damages were alleged to have accrued, that is, from December 23, 1899, to March 10, 1900, the period of time covered by the bond; and the other was, that during this time it had no agreement with the Southern Pine Company to move the output of its mill, and therefore, whether it would have received such freights, and, if so, to what extent, was purely a

matter of speculation. It is true that the evidence shows that the contract between the Southern Pine Company and the Offerman and Western Railroad Company was not executed in writing until December 5, 1900; but it is also true that the written instrument executed on that date was simply in pursuance of a contract between them which was in existence during the whole of the period covered by the bond sued on in this case. Under that contract, the Pine Company, in consideration of thirty thousand dollars and certain covenants on the part of the Railroad Company, sold and conveyed to the latter the Offerman road, and, for the same consideration, agreed to ship the output of its mills over the Offerman and Western Railroad, provided the rate of freight was no higher than by any other route. The purchase-price had been paid by the Railroad Company to the Pine Company, and possession of the railroad, rolling-stock, etc., delivered by the latter to the former, prior to the execution of this supersedeas bond. So the Offerman and Western Railroad Company not only controlled but owned a line of road over which to transport freight from the Southern Pine Company's plant at Nicholls, and had a contract with the Pine Company for the carrying of this freight, during the period of time covered by this bond. Both parties to the contract evidenced by the written agreement of December 5, 1900, were as much bound by its terms before it took formal and final shape in that instrument as they were afterwards. The contract had been entered into on November 6, 1899, possession of the property had been delivered to the purchaser a few days thereafter, and the purchase-price had been paid early in December, 1899. This gave the Offerman and Western Railroad Company a perfect title, as against the Southern Pine Company, to the railroad, rolling-stock, etc., and nothing more was needed to make the contract obligatory upon each of the parties thereto.

As the evidence demanded a verdict against each of these exceptions of fact, there was no error in directing the jury to so find. The exceptions of law and fact which were properly before the court having been legally disposed of as above indicated, the evidence demanding a finding in favor of the plaintiff, and, the amount found by the auditor not being in dispute, the judgment making the report of the auditor the judgment of the court naturally and legally followed.

*Judgment affirmed. All the Justices concur.*