CORNELIUS A. RED, plaintiff in error, vs. THE CITY COUNCIL OF AUGUSTA, defendant in error.

[1.] R. petitioned the City Council of Augusta to build two new stalls at a Market House, stating that he would rent one of them at $300 a year. The Council adopted a motion granting the request. At the next meeting, this motion was reconsidered. It did not appear, but that there was a standing rule making the action of one meeting subject to be reconsidered by the next meeting.

*Held*, That the jury were at liberty to presume, that there was such a rule, and that if such a rule existed, the Council was not concluded by its first action, but might reverse that action.

[2.] "Speculative damages" are not recoverable.

Case, from Richmond county. Decided by Judge HOLT, October Term, 1857.

An action was brought by Cornelius A. Red, against the City Council of Augusta, for an alleged violation of a contract, entered into between them, for the erection and furnishing of him a stall in the lower Market House of Augusta, for the vending of butcher's meat, and to substantiate which, he produced before the Court and jury, in evidence, drawn from the opposite party, his petition, addressed to the City Council, as follows:

" To the Honorable the Mayor and Members of the City Council of Augusta :

" The undersigned presents this petition to your honorable body and begs your immediate attention thereon. He calls to your attention the fact, that under the arrangement adopted at a previous meeting of your body, regulating the renting of the stalls in the lower Market of the city, he has been entirely excluded from obtaining a stall: and desiring to commence and carry on the butchering business in said market, requests that two new stalls may be erected, at the front or western end of said market; for either of which said

stalls, he is willing to pay an annual rent of three hundred dollars. Respectfully submitted.

CORNELIUS A. RED."

Which petition was presented to council, and accepted, as follows.

"Mr. Jackson moved that the prayer of the petitioner be granted; the motion being put, there was a tie; his Honor the Mayor voting affirmatively, caused the motion to prevail."

After which *A. B. Pickering* was sworn on the part of the plaintiff, and deposed:

"Knew plaintiff in 1855, he was preparing for the butchering business. He purchased one hundred and fifteen head of cattle in August, worth $10 or $12 a head. Witness tried to buy from plaintiff, previous to his renting a stall. Knows that plaintiff applied for a stall before the renting by Council came on. Plaintiff was a man of good means and credit— had a pasture. Plaintiff was able to carry on a large butchering business. About $4 a head profit on butchering. Would have brought in market $4 more, than if sold on foot. Witness sold a stall to plaintiff in 1856, because, he, witness, was not able to attend to the business. Plaintiff bought cattle in August, before the renting in November. Not unusual to buy cattle as far ahead as plaintiff did. Worth $1 per head per month to keep cattle. Offal worth 50 cents per head. Red had prepared a slaughter pen."

*Isaac R. Tant*, sworn on behalf of plaintiff. "Red had $1,500 worth of stock on hand, at the time of renting, 1st Monday in November, 1855. Had one hundred and fifteen or one hundred and twenty head of cattle on hand. Net profit on beef at that time was over $5 per head; all stalls suitable for butchering business, were assessed out to others. After plaintiff failed to get a stall, the witness was one of those who bought his stock of cattle from him. After the ultimate failure of plaintiff to get a stall in the market, witness made $5 profit on the cattle bought of plaintiff.

The following evidence was offered by defendant from the minutes of Council:

"Mr. Platt moved a reconsideration of the proceedings of the last meeting of Council, granting the renting of a stall, in the lower market, to Cornelius A. Red.

Mr. Jackson moved an adjournment. Lost.

Mr. Jackson moved to lay the matter on the table. Lost.

Mr. Jackson to adjourn. Lost.

Mr. Conley moved a reconsideration of the petition of Cornelius A. Red.

The motion prevailed."

*John Foster*, sworn for defendant. "Knows that Red could have obtained a stall, at the renting in 1855. Mr. Dye and Mr. Conly, the market committee, told Mr. Red that he could have a stall, which Dwyer had bid off, at the price he agreed to pay, or if he would bid on it, it would be put up again. He, Red, replied, that he would be damned if he would have it; if he could not get a corner stall he would not have any. The stall bid off by Dwyer was an eligible stall, third from the west end of the market. Witness once rented it, and made as much money there as anywhere else. Profits from butchering are fluctuating as other business. If witness killed three or four head of cattle, and four or five sheep, each day made ten dollars profit, was satisfied. Cattle are worth three to four dollars more on the stalls than on foot. The offal about pays for the butchering."

*Daniel Kirkpatrick*, sworn for defendant: " Red could have obtained a stall at the renting in 1855; agrees with witness Foster in his testimony."

*B. Conly*, sworn for defendant: " Knows that Red could have obtained a stall. Witness was a member of the market committee, and made the offer to Red, testified to by Foster.

After argument by counsel of both parties, the cause was submitted to the jury, who returned a verdict for the defendant.

During the same Term, the plaintiff's counsel moved for a new trial, in said case, on the following grounds, to-wit:

1st. Because the verdict of the jury, is against evidence, and the weight of evidence.

2d. Because the verdict of the jury is contrary to law in this: The defendant is liable equally as individuals, for the violation of its contracts.

3d. Because the verdict of the jury is contrary to the charge of the Court, in that the measure of damages laid down by the Court to the jury, was such amount of damages as the defendant, should by evidence show, that he had actually sustained, subsequently to the time of the making of the alleged contract: The evidence showing that he had sustained damage after that time, to the extent of the difference between the sale on foot, and being slaughtered and sold as butcher's meat, in the market, of one hundred and fifteen head of cattle; and the verdict was for the defendant, when it should have been under the charge of the Court, for the plaintiff; and in that, the Court charged, that a municipal corporation, was liable for a contract, not under seal, made in pursuance of the regular business of the corporation.

Argument having been heard on the motion for a new trial, the Court below overruled the same on each and all of the grounds taken, and to this decision, the plaintiff filed his bill of exceptions, assigning the same as error.

SNEAD & SNEAD, for the plaintiff in error.

MILLER & JACKSON, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

Was the Court right in overruling the motion for a new trial?

All the grounds of that motion, may be considered as included in the first, that the verdict was contrary to the evidence, and to the weight of the evidence.

We do not think this ground well founded.

It is far from clear, that there was ever any *contract* between the City Council and Red.

At one meeting of the City Council, the motion that Red's "prayer" be granted, was carried by the casting vote of the Mayor.

At the next meeting, this action was reconsidered.

[1.] Now was there a standing rule making the action of the Council subject to reconsideration in this way? No proof on the point is in the record. We are therefore permitted, if we are not required, to presume, that there was such a rule.

If there was, then the matter of the petition, was still in an unfinished state, notwithstanding the first action of the Council, and the Council had still the right to ratify or reverse that action.

Especially is this so, inasmuch as, the first action of the Council, even if it was ever communicated to Red, did not lead him, as far as appears, to make new investments, or to engage in new operations of any kind.

[2.] But even if there was proof of a contract, and also of a breach of that contract, there was no proof of any damages, except " speculative damages"—that is, the loss of conjectural profits, and these are too remote and uncertain to be recoverable. So this Court has held in several cases. *Cooper vs. Young*, 22 *Ga. R.* 269. *The Coweta Falls Manufacturing Company vs. Rogers*, 19 *Ga. R.* 417.

Judgment affirmed.