### WAYCROSS AIR-LINE RAILROAD COMPANY *et al. v.* OFFERMAN & WESTERN RAILROAD COMPANY.

114 727
Case 2
s119 984
s119 987
114 727
Case 2
121 691

1. A suit on a bond made by a railroad company in a county other than that in which its principal office is located, conditioned to pay damages to another railroad company resulting from the delay incident to the prosecution of a writ of error complaining of the refusal to enjoin the latter company from crossing the tracks of the former in still another county, is properly brought in the county where the principal office of the obligor company is located.
2. The provision of the constitution authorizing joint obligors residing in different counties to be sued in the county of the residence of either applies to cases in which one or more joint obligors are railroad companies.
3. Damages which may reasonably be considered as in contemplation of the parties when the contract was made are not too remote to be the subject of a legal recovery.
4. The petition set forth a cause of action, and was not subject to any of the objections set up in the demurrers.

Argued January 11,—Decided February 6, 1902.

Action on bond. Before Judge Bennet. Ware superior court. July 30, 1901.

*J. L. Sweat*, for plaintiffs in error.
*W. E. Kay* and *John C. McDonald*, contra.

COBB, J. The Offerman and Western Railroad Company brought, in the superior court of Ware county, an action against the Waycross Air-Line Railroad Company and others upon a bond in which the defendant company was principal and the other defendants were securities, alleging in substance as follows: Both plaintiff and the defendant company are corporations created under the laws of Georgia, the latter having its chief office in Ware county. Plaintiff was authorized by its charter to construct a line of railroad from Offerman in the county of Pierce to Nicholls in the county of Coffee, and, in order to reach the place selected as its terminus at Nicholls, was compelled to cross the tracks of the defendant company at that point. Near the terminus was a large sawmill operated by the Southern Pine Company, and the output from its mill was necessarily shipped over the line of the defendant company, and it well knew that if the plaintiff was allowed to cross its tracks and reach the plant of the Southern Pine Company, on account of the community of interest between the stockholders of the latter company and the plaintiff the business of the defendant company would be necessarily lessened, the plaintiff being under agreement with the Southern Pine Company to move the output of its mill when in position to handle the traffic, which was also well known to the defendant company. The defendant company desiring, by reason of the facts above mentioned, to prevent the completion of the plaintiff's road, applied for an injunction to restrain it from prosecuting a proceeding which it had instituted to condemn a right of way across the tracks of the defendant company, and on October 9, 1899, procured a restraining order having that effect. On December 16, 1899, the application for injunction coming on for a hearing, the temporary restraining order was rescinded and the application for injunction was denied. On December 23, the defendant company had certified a bill of exceptions assigning error upon the refusal of the judge to grant the injunction, and procured an order allowing a supersedeas of the judgment rescinding the restraining order and denying the injunction until the final determination of the case in the Supreme Court, upon condition that a bond should be given with good security in the sum of $10,000, conditioned to pay to the plaintiff all of the damages which it should sustain by reason of any delay resulting from the granting of the restraining order and the continuing of the same in force.

The bond required by this order was given, a copy of the same being exhibited to the petition. The condition of the bond was to pay to the plaintiff all damages which it "should suffer by reason of any delay entailed upon it by reason of its being restrained from condemning a right of way across the Waycross Air-Line Railroad at Nicholls from the time when said crossing could have been condemned up to the time when the said crossing should be actually put in and the road put in operation," in the event the judgment refusing the injunction should be affirmed by the Supreme Court. On the 27th day of February, 1900, the Supreme Court affirmed the judgment refusing the injunction. See *Waycross R. Co.* v. *Offerman R. Co.*, 109 *Ga.* 827. The prosecution of the writ of error in the Supreme Court delayed the operations of the plaintiff until March 10, 1900, when the damages for crossing the tracks of the defendant company were fixed by assessors, duly tendered and accepted, and the crossing made. In the interval from the 23d of December, 1899, to the 10th of March, 1900, the amount that the plaintiff would have earned per day if it had been allowed to cross the tracks of the defendant company is distinctly alleged, as well as what would have been the expense attendant upon the making of such earnings; and attached to the petition are exhibits showing the quantity of freight which had been shipped by the Southern Pine Company over the line of the defendant company between the dates above mentioned, with the amounts which had been received by the defendant company as freight from such shipments; such exhibits showing that the actual loss sustained by the plaintiff company on account of its inability to reach its terminus and to haul the freights of the Southern Pine Company amounted in the aggregate to more than $2,500. It is alleged that the earnings so lost are not speculative but certain in character, being amounts which would have been earned by the plaintiff company from hauling the shipments from the sawmill of the Southern Pine Company, which would have been shipped over the line of the plaintiff if its line had been completed, and that the failure of the plaintiff to receive such freight was entirely due to the action of the defendant company in preventing it from completing its line by constructing a crossing over the tracks of the defendant company, and that these damages were in contemplation of the parties at the time the bond sued on was executed. The defendants demurred to the petition; and their demurrers having been overruled, they excepted.

1, 2. It is contended that the court erred in overruling the demurrer, for the reason that it appeared from the petition that the superior court of Ware county was without jurisdiction. While the principal office of the defendant company is located in the county of Ware, it is said that as the contract was made and was to be performed in the county of Pierce, and that as the wrong and injury complained of was done in the county of Coffee, the suit should have been brought either in the proper court in the county of Pierce or of Coffee. By the Civil Code, § 2334, it is provided: "All railroad companies shall be sued in the county in which the cause of action originated, . . and also on all contracts made or to be performed in the county where suit is brought; any judgment rendered in any other county than the one in which the cause so originated shall be utterly void." So far as the contention that the suit should have been brought in the county of Coffee is concerned, it is sufficient to say that the suit is not brought for any tort or wrong done in that county, but it is an action upon a contract; and therefore the question to be determined is, where a suit of this character is to be brought. It is true that the damages resulted to the plaintiff from its inability to complete its line of road in Coffee county, on account of the injunction which had been obtained in Pierce county; but the cause of action in the present case is not anything done in Coffee county, but is the breach of a contract entered into by the defendants in another county. The bond sued on does not appear on its face to have been executed in Pierce county. The signatures to the bond are attested by a notary-public in Ware county, and from this it might be inferred that it was made in that county. But even treating the contract as one made in Pierce county, while the plaintiff had a right to bring the action in that county because the contract was made there, still it was not absolutely necessary that the action should be brought there, if the contract was to be performed in another county. The undertaking in the bond was to pay damages upon the happening of a certain condition, and the place at which the defendant company could be called on to pay these damages was at the place of its residence, that is, where its principal office was located, and this would be the place where the contract was to be performed. If the bond sued on had been an instrument where demand for performance had to be made before suit, demand would have had to be made in the county of Ware;

but as the cause of action was of a character in which a suit for the amount claimed was a sufficient demand under the law, the place at which such suit could be brought was, of course, the place where performance was to take place, that is, in the county of Ware, where the principal office of the company is located.    See, in this connection, *Central of Georgia Ry. Co.* v. *State,* 104 *Ga.* 831 (1); 834. In addition to this, the constitution provides that "suits against joint obligors, joint promisors, copartners, or joint trespassers, residing in different counties, may be tried in either county." Civil Code, § 5872. · It appears from the petition that the principal and sureties on the bond contracted to be jointly and severally bound thereby.    Some of the sureties resided in Ware county, and one of them resided in Wayne county.    Even if there is anything in the section of the code providing where suits against railroad companies shall be brought which is in conflict with the constitution, of course the provisions of the section must yield to what is provided in the constitution.    In either view of the case, the superior court of Ware county had jurisdiction.

3.  A further contention of the plaintiffs in error was that the demurrer should have been sustained, for the reason that the damages claimed were too remote to be the basis of a legal recovery. We do not think that under the allegations of the petition this objection is well founded.    When all of the allegations of the petition are taken together, it is clearly shown that the very damages which are now sought to be recovered were those which were in actual contemplation of the parties when the contract was entered into, and in cases of this character it is well settled that such damages, even though to some extent contingent and remote, may be recovered.    In the case of *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582, which followed the case of Hadley *v.* Baxendale, 9 Exch. Rep. 341, 354, which is the leading case on the subject, the rule applicable in cases like the present is thus stated: Damages which are the legal and natural result of the act done, though to some extent contingent, are not too remote to be recovered, when such damages may reasonably be supposed to have been in contemplation of both of the parties at the time they entered into the contract, as the probable result of the breach of it.    See also *Gore* v. *Malsby,* 110 *Ga.* 894 (3), 902 ; *Electric Ry. Co.* v. *Coal Co.,* 98 *Ga.* 192 (2).

4.  Another ground of the demurrer was that the petition set

forth no cause of action, for the reason that it showed that the defendant company had only availed itself of its legal right to carry its case by writ of error to the Supreme Court, and that it should not be held liable in damages for the exercise of this right. It is true the defendant company had a legal right to bring its case to this court and to have this court pass upon the case made by it. But when it entered into a solemn obligation, which the judge under the law of this State had a right to require it to enter into as a condition precedent to obtaining a supersedeas of the judgment refusing to grant the injunction, and in that obligation undertook in express terms to pay to the plaintiff the very damages which are now sued for, it does not lie in the mouth of the defendants to say now that they should not be held liable for the mere exercise of a legal right by the defendant company. It had a right to bring its case here, but it did not have a right to a supersedeas of the judgment refusing to grant the injunction, unless the judge in his discretion saw fit to grant the same; and the supersedeas having been granted upon such terms as required the defendant company to pay damages resulting from the delay incident to the prosecution of a writ of error in this court, it must stand by the contract thus entered into; and if upon the trial the damages alleged are proved, it must make good the obligation of the contract which is the foundation of the suit. But even if the judge had no right to require the bond, as the defendants voluntarily entered into the obligation to pay the damages resulting from the delay, it is too late now to call in question the right of the judge to require the bond to be given.

Another ground of the demurrer is that it does not appear that at the time the damages sued for are alleged to have been sustained the plaintiff had a line of road in operation for the transportation of freight to and from Nicholls. . A sufficient answer to this contention is that from the allegations of the petition it appears that the reason the plaintiff did not have its road completed was due to the conduct of the defendant company. It is also set up in the demurrer that there is no sufficient allegation of any contract or agreement between the plaintiff and the Southern Pine Company. When the allegations of the petition are taken as a whole, we think it sufficiently appears therefrom that there was a binding agreement between the Southern Pine Company and the plaintiff to ship its freights

over the line of the plaintiff. This being true, there need not have been, as contended in the demurrer, any further allegation showing how the plaintiff expected to obtain the freights of the Southern Pine Company, when the defendant company was in a position where it could also compete for carrying such freights. The petition set forth a cause of action, and was not subject to any of the objections set up in the demurrers.

*Judgment affirmed. All the Justices concurring.*