## ANDERSON v. HILTON & DODGE LUMBER COMPANY.

1. Where proceedings are brought to enforce rights arising under a contract required to be in writing, failure to allege in the pleadings that such contract was in writing can not be taken advantage of by demurrer. The silence raises no presumption that the contract exists only in parol.

2. An allegation that the plaintiff sold to the defendant standing timber to be sawed into lumber, and that after the defendant had moved and located his mill for the purpose of cutting the timber the plaintiff stopped and prohibited the defendant from cutting the timber, whereby he was compelled to shut down his mill and lose the profits, was not demurrable on the ground that the damages were remote or speculative.

3. The profits sued for were not those which were dependent on some other business or enterprise entered into because of the contract, but the defendant was asserting a right for damages occasioned by his being prevented from making the profits which would have been the immediate fruit of the very contract by which the plaintiff granted the right to the defendant to enter upon the land, operate a mill, and sell the lumber. Civil Code, § 3798.

4. Profits being net earnings after the payment of all expenses, the plaintiff was not entitled to a recovery of the profits as damages, and likewise for the expense of moving and removing his mill.

5. The allegations in the plea were not sufficient to state a cause of action for damages because of the plaintiff's failure to comply with the promise to lend money to the defendant.

Argued November 28, 1904. — Decided January 27, 1905.

Affidavit of illegality. Before Judge Lewis. Laurens superior court. July 26, 1904.

The Hilton & Dodge Lumber Company foreclosed a mortgage dated August 14, 1896, on personal property in the manner provided in the Civil Code, § 2753. The mortgagor, Anderson, defended by the counter-affidavit allowed by the Civil Code, § 2756. There were several pleas, some of which were stricken; and after the case was remanded (110 *Ga.* 263), the affidavit was so

amended as to charge that on August 14, 1896, the Hilton & Dodge Lumber Company sold to Anderson all the pine timber suitable for sawmill purposes on twenty-eight lots of land in Laurens and Montgomery counties, at 50 cents per thousand for all timber averaging 400 feet, and 75 cents per thousand for all lumber containing over 400 feet, agreeing at the same time to buy from the defendant the lumber sawed therefrom at $9.20 per 1000 feet; that the Hilton & Dodge Lumber Company also agreed to advance him certain sums of money with which to enable defendant to locate his sawmill on the property for the purpose of squaring the timber, said loan to be secured by an additional mortgage on the property previously conveyed; that the defendant agreed to, and did in pursuance of the contract, remove his sawmill about fourteen miles to a point convenient to the timber sold; that the plaintiff knew, at the time of making the contract, that it would be necessary to make such removal and incur the expense incident thereto; that in February, 1897, the lumber company prohibited the defendant from cutting or sawing the timber; that this expense was a complete loss to the defendant, and the amount thereof he prays may be recouped or set off as against the plaintiff's claim; that plaintiff cut a small number of trees and delivered them to Hall and Johnson to square the logs for market, and thereupon the plaintiff notified Hall and Johnson not to square the timber, or else that plaintiff would hold them responsible, and thereupon the said Hall and Johnson refused to square the logs, to defendant's damage; that shortly thereafter the plaintiff stopped and prohibited the defendant from cutting the timber on the twenty-eight lots, to his damage, and by reason thereof defendant had to shut down his mill, and lost the profits which he otherwise would have made. He also sues for the expense of moving his mill to the timber, and for expenses for subsequently being obliged to move it away by reason of the conduct of the defendant. He states how much timber was on the land, and that he could have cut the same had he been allowed to do so by the defendant, and that he lost the profits of the business between February 1, 1897, and July 1, 1897. The mortgage shows on its face that it was given to secure not only the amount indicated, but such future advances as might be made.

The defendant by his affidavit alleged that the plaintiff had agreed to advance him additional sums to operate his business, but failed so to do and refused to pay checks drawn by him on it, to his damage. The court refused to allow the amendment. ₀ The defendant excepted. The original affidavit of illegality was filed in May, 1897. The demurrer filed at the January term, 1899, was sustained, and this judgment was reversed. 110 *Ga.* 226. There was an additional amendment in July, 1898, to the effect, that the defendant had been enjoined by one McLendon from cutting the timber; that he was delayed thereby for sixty days, and finally permanently enjoined; that thereby he lost the timber which the plaintiff had sold him, to his damage $1800. The last amendment was filed on July 25, 1904. The affidavit of illegality and amendment were demurred to on twenty-two grounds. The bill of exceptions recites that the court refused the amendment, "because it set up a contract for timber growing on said land, and did not allege that the contract was in writing; and because the damages sought to be set off in said amendment against the debt of the plaintiff were too remote and speculative to be so set off." The court thereupon sustained the demurrer to the original affidavit and amendment, and entered judgment for the plaintiff. The defendant excepts to this ruling, contending, among other things, that the court could not consider the special grounds of demurrer to the affidavit and that amendment, which had been of file in court for several terms.

*T. L. Griner* and *J. K. Hines*, for plaintiff in error.
*Dessau, Harris & Harris* and *DeLacy & Bishop*, contra.

LAMAR, J. (After stating the foregoing facts.) The objections raised by the special demurrer could have been cured by amendment. The parties have argued only the controlling question. It would be unprofitable to consider each of the many special grounds of the demurrer. We shall therefore consider only the points which the bill of exceptions indicates were involved in the decision by the trial judge. *Moss* v. *Fortson,* 99 *Ga.* 496.

1. A party is not obliged to set out in his pleadings the evidence on which he relies. The failure to allege that a contract is in writing raises no presumption that it exists only in parol. It is now well settled in this State, that, where proceedings are

brought to enforce rights arising under agreements required to be in writing, the failure to allege that the contract was in writing can not be taken advantage of by demurrer.   *Taliaferro* v. *Smiley*, 112 *Ga.* 62 (3), 66; *Draper* v. *Macon Company*, 103 *Ga.* 661.

2, 3. The plaintiff agreed to sell certain timber to the defendant at a certain price.   It also agreed to buy from him lumber cut therefrom at a certain price.   The damages arising from the breach of the contract to sell or the breach of the contract to buy were recoverable, and the measure of damages in such cases is clearly defined.   But treating the counter-affidavit as pleading seeking to set up a cause of action for the damages resulting from the plaintiff's refusal to permit the defendant to operate the mill and cut the timber sold for that purpose, it was not demurrable. Anderson was not suing to recover profits which were dependent on some other enterprise entered into because he happened to have this contract.   He sued for the profits which would have been the immediate result of his operating a mill which the plaintiff had agreed he might operate when it stipulated that he should cut the trees and saw them into lumber for purposes of sale.   He was suing for damages in contemplation of the parties when the contract was made.   Civil Code, § 3798; *Stewart* v. *Lanier Co.*, 75 *Ga.* 582; *Waycross Co.* v. *Offerman Co.*, 114 *Ga.* 731; *Kenny* v. *Collier*, 79 *Ga.* 744.

4. Of course, the plaintiff is not entitled to recover for the profits and also the expenses in conducting the business.   Moving the mill to the land or removing the mill from the land were not expenses incurred in carrying out a contract between two parties, such as those included in Civil Code, § 3806.   Nor are they expenses to which a party was put by reason of a tort referred to in Civil Code, § 3908.   But the expenses of moving and removing the mill were a necessary part of the cost of conducting defendant's business and by the expenditure of which he expected to make the profit for which he sued.   They are no more recoverable than would be the expenses of paying his employees while the mill was actually in operation.

5. The mortgage did provide that the property thereby conveyed should be security for any advances thereafter made to the defendant by the plaintiff.   It is alleged, that an agreement to lend was violated, and that the defendant was damaged by the

company's failure to advance money as agreed. But the defendant does not state enough to warrant a recovery on the ground that there had been damage to his credit by failure to pay the check. Nor does he allege enough to entitle him to recover for a breach of the agreement to lend. There have been cases in which such suits have been maintained, but they are extremely rare, and, in view of the nature of money, must be. One dollar in legal tender is worth no more than another. The price of money is the principal and the legal or contract rate of interest. Hence the circumstances must be peculiar in which a person is entitled to damages because of a failure to lend as promised. No injury will flow from such a breach if the same amount can be borrowed from another on the same terms. If there is a mere contract to lend, and no date is named for the maturity of the loan, repayment is due immediately. Damages for failure to receive that which would have to be at once returned would be nothing; though the circumstances might be such as to change this rule if the lender knew that the money was intended for some purpose which precluded the idea of immediate repayment. But it is evident that the nature of the transaction is such as to afford no room for the implications which so often supply the omitted terms in many other contracts. There must be something definite. The contract must be supported by a consideration. It must be mutual. *Swindell* v. *Bank*, 121 *Ga.* post. And it must be made to appear that the borrower had been unable to obtain a like sum upon like terms. It would further be necessary to show definitely and distinctly that the damage (other than that arising from having to pay a higher rate of interest) was in comtemplation of the intending lender at the time he made the agreement to lend. The counter-affidavit in the present case did not state a cause of action for the alleged breach of the contract to lend money or make advances. Blue *v.* Capitol Bank, 145 Ind. 518; Gooden *v.* Moses, 99 Ala. 230; McGee *v.* Wineholdt, 63 Pac. 571; Kelly *v.* Fahrney, 97 Fed. 176; Equitable Loan Co. *v.* Ware, 26 S. W. 276 (2, 3); Lowe *v.* Turpin, 37 L. R. A. 233.

*Judgment reversed. All the Justices concur.*