## 369. CAROLINA PORTLAND CEMENT COMPANY *v.* COLUMBIA IMPROVEMENT COMPANY.

1. The remedies provided in section 3551 of the Civil Code are not exhaustive, nor do they exclude the pursuit of a different remedy by the seller, where a purchaser refuses to take and pay for goods bought, and where, under the facts of the case, none of the three methods of procedure mentioned in that section is available. The recovery of profits is allowable where there is a breach by the purchaser of the contract of sale. And where notice is given by him of his refusal to carry out his contract, the articles purchased need not be tendered.

2. As a general rule, a party is entitled to recover profits that would have resulted from a breach of a contract into which he has entered, where the breach is the result of the other party's fault. And while a breach of the original contract will not ordinarily entitle a plaintiff to recover as damages the profits of collateral enterprises or subcontracts, yet where the knowledge of the subcontract is within the contemplation of the parties when the original contract is made, and is known to have been made with reference thereto, anticipated profits shown to be certain, fixed in amount, and the direct fruit of the contract, are recoverable. Profits are excluded only when there are no criteria, definite and certain, upon which an adjudication can be based. They then become speculative and imaginary.

(a) Some of the allegations in the plaintiff's petition may be subject to special demurrer, but the petition as a whole is not subject to general

demurrer, and the court erred in dismissing it. *Douglas, Augusta & Gulf Ry. Co.* v. *Swindle,* 2 *Ga. App.* 550 (59 S. E. 600).

Attachment, from city court of Columbus—Judge Willis. January 22, 1907.

Argued June 19, 1907.—Decided January 29, 1908.

*Dismukes & Worsley,* for plaintiff.

*Garrard & Garrard, W. Cecil Neill,* for defendant.

RUSSELL, J.  The plaintiff in error sought to recover, as damages for the breach of a contract of sale, the difference between the price at which it had contracted to buy 1,500 barrels of cement and the price at which the defendant in error had agreed to buy the same.  The plaintiff's petition alleged, that the Improvement Company contracted to buy of it 1,500 barrels of a certain brand of cement, warranted to meet tests as to quality, for $1.94 per barrel; that in view of this special contract (as was known to the defendant) the plaintiff purchased said cement at $1.64 per barrel; and that by reason of the defendant's refusal to comply with its contract of purchase, the plaintiff had been damaged 30 cents per barrel, or $450 in all.  The defendant filed general and special demurrers, and the plaintiff filed certain amendments, which, however, did not meet or remedy all of the objections presented by demurrer; and the court finally sustained the general demurrer and dismissed the petition.

Reduced to its last analysis, the controlling question presented by the record is, whether there is any measure of damages recognized by law, where one who has purchased goods violates the contract by refusing to accept them, other than the well-settled rule that in the case of such a breach of the contract the measure of damages is the difference between the price at which the goods were contracted to be sold and the market-price thereof at the time and place of delivery.  If this is the only measure of damages which the law recognizes, the trial judge properly sustained the demurrer; for it is nowhere alleged, either in the original petition or in the amendment, what was the market price of such cement, at Columbus, at the time fixed for its delivery, nor that the market price was less than the price at which the plaintiff had purchased; and unless the plaintiff is entitled to recover the difference between the price at which it bought and that at which it sold, the

dismissal of the action was proper.   If a different measure of damages from that above stated can be applied, the demurrer could not have been legally sustained upon the ground that the plaintiff alleged nothing as to the market price of cement at the time and place of delivery, and did not allege that the market price at that time and place was less than the price at which the plaintiff had purchased, whereby the plaintiff must lose the difference, except for the defendant's liability to respond therefor.  The difference between the contract price and the market price of the articles sold, at the time and place of delivery, is ordinarily the measure of damages in an action brought to recover damages for breach of a contract to purchase goods which the buyer refuses, without good reason, to accept after having purchased; and citation of authority in support of this proposition would be superfluous.   Almost universally, too, this rule is a fair one; because if the market price is not less than the contract price at the time and place the goods are delivered, it may be presumed that the goods which the buyer has rejected can be sold at the market price for as much as the buyer contracted to pay, and that therefore no loss can accrue. There are instances, however, where, due to circumstances, the market price may be as great at the time and place of delivery as the contract price for which the goods were sold, or even greater. Can it be said in such an instance that the vendor has not been damaged, because his damages are too remote and are  speculative, or because his loss, if any, could have been prevented by a sale by the plaintiff to some one else at the market price?   We think not, and, therefore, are of opinion that the court erred in dismissing the petition in the present case.   It is well settled that profits which were in the contemplation of both parties and which are not conjectural or speculative can be recovered.

The petition in this case, *as against a general demurrer*, sufficiently alleged that the defendant knew the facts, and that the plaintiff's profits were to consist in the difference between the price at which it was to procure the special brand of cement from the Kosmos Portland Cement Company, and the price at which it was to resell to defendant.  "A loss of profits is always a proper subject for compensation, if such a loss of profits can be shown with reasonable certainty and without resorting to speculation or conjecture."  2 Mechem on Sales, §1704.  Furthermore, the prof-

its sued for in this case are recoverable because they are the direct, immediate fruit of the contract. Civil Code, § 3798. See also *Waycross R. Co.* v. *Offerman,* 114 *Ga.* 727 (40 S. E. 738); *Stewart* v. *Lanier House Co.,* 75 *Ga.* 582; *Van Winkle* v. *Wilkins,* 81 *Ga.* 93 (7 S. E. 644); *Anderson* v. *Hilton & Dodge Co.,* 121 *Ga.* 688 (49 S. E. 725).

Counsel for the defendant in error insists upon the proposition that the measure of damages in *all* cases arising from a breach of a contract to purchase is the difference between the *market price,* at the time and place at which the purchase is to be delivered, and the contract price; and cites the Civil Code, § 3551, and the rulings in *Georgia Refining Co.* v. *Augusta Oil Co.,* 74 *Ga.* 507 (2); *Davis Sulphur Ore Co.* v. *Atlanta Guano Co.,* 109 *Ga.* 608 (34 S. E. 1011); *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 145, 146 (42 S. E. 378); *Americus Grocery Co.* v. *Brackett,* 119 *Ga.* 491 (46 S. E. 657); *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 416 (41 S. E. 664); *Sanders* v. *Allen,* 124 *Ga.* 684 (52 S. E. 884); *Huggins* v. *Southeastern Lime Co.,* 121 *Ga.* 311 (48 S. E. 933); *Mendel* v. *Miller,* 126 *Ga.* 834 (56 S. E. 88, 7 L. R. A. (N. S.) 1184). After an examination of the decisions cited by the learned counsel for defendant in error, as well as much fuller and more thorough investigation of the subject subsequently, we are satisfied that the exact question now before us has never been passed upon by the Supreme Court of this State. Section 3551 of the Code has frequently been referred to, construed, and defined, with reference to questions presented in various forms, in a large number of cases carried to the Supreme Court, but the exact question whether the three privileges or options accorded a vendor, where a purchaser refuses to take and pay for goods he has bought, are so exclusive as totally to preclude the right of such a vendor to avail himself of any other remedy (no matter what may be the peculiar features of the case) than the three suggested in § 3551 has, in our opinion, never been decided by our Supreme Court. But in *Fontaine* v. *Baxley,* 90 *Ga.* 416 (17 S. E. 1015), Judge Bleckley, in holding that the plaintiff was bound to elect "which class of damage he would go for," by well-nigh conclusive inference authorizes our view of this case.

As we have already stated, we think the trial judge erred in sustaining the general demurrer, and we are of opinion that his

judgment was controlled by the view that the plaintiff was absolutely confined to the three courses of conduct suggested by §3551 of the Civil Code, and that unless the plaintiff had selected one of the three it had no right of action. In our opinion, the use of the word *may* in §3551, instead of a stronger and more mandatory term, is not without significance, and not only indicates that "circumstances alter cases," but clearly recognizes that there may be instances in which a vendor would be deprived of rights to which he is justly entitled, were he forced to place himself squarely within the terms of the code section, instead of being permitted to select either one or none of the rules of action which, by the repeated use of the word *may,* are merely suggested as rights cumulative of any others to which a vendor is entitled. "If a purchaser refuses to take and pay for goods bought, the seller *may* retain them and recover the difference between the contract price and the market price at the time and place for delivery; or he may sell the property, acting for this purpose as the agent for the vendee, and recover the difference between the contract price and the price on resale; or he may store or retain the property for the vendee and sue him for the entire price." Civil Code, §2551. Our opinion, that §3551 was never intended to be exclusive of other means which can be used by the vendor in establishing his rights arising from the breach of a contract, nor to be deemed exhaustive of the subject, is enforced by a consideration of its origin. The section as codified is merely the legislative approval of principles announced in *Ga. Refining Co.* v. *Augusta Oil Co.,* 74 *Ga.* 498 (2), *Miller* v. *Moore,* 83 *Ga.* 684 (10 S. E. 360), *Camp* v. *Hamlin,* 55 *Ga.* 259, and *McCord* v. *Laidley,* 87 *Ga.* 221 (13 S. E. 509). From the very nature of the rules which control reviewing courts, the ruling in each of these cases was merely the application of the settled principles of law to the peculiar facts of the case under consideration, and the determination, from the evidence and the pleadings, of the special issues presented by the record. Beyond this would be obiter dicta. So much of the decision in each case as was approved by the legislature became code law, just as the ruling in this case (upon a state of facts entirely different from those in either of the cases cited), if it should appear sound in the eyes of the legislature, might be adopted as statute law.

The defendant in error insists on the proposition that the first

clause of the section furnishes the only proper measure of damages, in case the plaintiffs were otherwise entitled to recover. The first clause of § 3551 was taken from the second headnote in *Ga. Refining Co.* v. *Augusta Oil Co.,* supra, almost in its identical words affirming an instruction of Judge Roney to the jury, which was delivered upon the authority of Benjamin on Sales, § 1165, Rickey *v.* Tenbroeck, 63 Mo. 567, Dana *v.* Fielder, 12 N. Y. 50 (62 Am. D. 130), and *Groover* v. *Warfield, 50 Ga.* 644. Learned counsel represented the plaintiff in error in that case (as in this), and they argued that Judge Roney's charge was error, because the plaintiff did not have the right to keep the oil and give the defendant a credit therefor, based on the market price, without an actual sale. A sale by the vendor, as agent for the vendee, of certain fruit trees, which the purchaser had refused, and the right of the vendor to recover for the difference between the proceeds of the sale and the original purchase-price, having been upheld (in the reversal of the judgment of Z. T. Odom, judge pro hac vice, in the *Camp* case, supra), this was supposed to be the *only* means by which the damages for the breach of contract could be measured. The language employed and the origin of § 3551 convince us that the history of § 3551 and its origin mark an evolution of the law, and confirm the trite statement that for every wrong there is a remedy. We are satisfied, not only from this, but also from the merely permissive language employed, that the legislative approval of the three named methods of measuring damages was by no means intended to prevent the use of any other measure which could be proved to be just, suitable to the nature of a particular transaction, and absolutely correct. If a plaintiff has lost profits on a sale and has the right to recover at all, and those profits are so definitely fixed as to be absolutely capable of computation, and if the damages are dependent on no contingency except the refusal of the defendant to accept and pay for his purchase, and if, as alleged, the defendant knew the profit the plaintiff would receive from the transaction, and, therefore, it is made to appear that the damages which would result to plaintiff from a breach were in contemplation of both parties, the plaintiff is entitled to recover that which is directly due to the act done by the defendant with full knowledge of the consequences. In one respect the case alleged in the petition is pe-

·culiarly different in its facts from any other case which has come under our observation, unless it be *Fontaine* v. *Baxley,* supra. The plaintiff could not pursue any of the paths pointed out by §3551. The plaintiff's vendor, the Kosmos Company, being anxious, no doubt, to establish a reputation for its output by its use on government and other high-grade work, made its special price, upon which the plaintiff's selling price was fixed, and profits were applicable only to such quantity of cement as covered the defendant's purchase. All parties knew and understood this, so that the plaintiff could not retain the goods nor sell them as the defendant's agent.

2. The defendant in error relies upon §3912, in support of the judgment of the lower court in sustaining the demurrer. To our mind that section has no application to the state of facts alleged in the petition now being considered. It goes without saying that "if the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." Civil Code, §3912. The decisions in *Clay* v. *W. U. Tel. Co.,* 81 *Ga.* 285 (6 S. E. 813, 12 Am. St. R. 316), and *Red* v. *Augusta,* 25 *Ga.* 386, are both based upon the principle stated in this section. The case at bar, however, judged by the allegations of the petition, is wholly different from the *Clay* or the *Red* case. Clay could not recover, because he had no contract with Col. Hughes, nor any knowledge that an agreement as to terms would be reached. He really did not know—could only surmise—that the purpose of sending the summons by telegram was to make a contract. Red sued for profits dependent upon bad trades as well as good trades, during a year's business which he might have done as a butcher, if the City of Augusta had built him a stall according to contract. See also *Willingham* v. *Hooven,* 74 *Ga.* 234. While it has always been properly ruled in this State that damages which are too remote, under the terms of §3912, can not be recovered, we are unable to find any case in which it has been held that profits of a fixed, definite amount, unquestionably "arising from the contract itself," and measured by the difference between the cost of the article to the vendor and its value as fixed by the contract, can not be recovered. It has frequently been

held that anticipated profits were not recoverable, because they were purely imaginary or entirely contingent on matters disconnected with the contract, but, so far as we are able to ascertain, it has never been held that *profits,* as such, are for that reason alone not recoverable. On the contrary, in *Kenny* v. *Collier,* 79 *Ga.* 746 (8 S. E. 58), in which Judge Bleckley, on page 747, humorously says: "That anticipated profits from a business intended to be carried on by the plaintiff can not be allowed, is as well settled as anything can be in an age of legal scepticism," it is held that "the general rule does not deny profits, but confines the recovery to profits arising from the contract itself, the measure of which is the difference between cost and value. If there be no difference, or if cost be in excess of value, nominal damages only will be recoverable." It is clear that the profits one would have made, had it not been for the breach of the contract by the opposite party, can be recovered if they can be proved to be directly due to the breach, entirely dependent upon it, and the amount is absolutely fixed and certain, and the damages sought were within the contemplation of the parties. While the exact point has not been ruled in this State, our judgment is supported by ample authority.

In his excellent work, Mr. Tiffany says: "If the contract is for the sale of *goods to be manufactured, or otherwise procured by the seller,* and the buyer refuses to accept or gives notice that he intends to refuse acceptance, *so that the seller is excused from procuring and tendering the goods,* he will be entitled to such damages as will put him in the same position as if he had been permitted to complete the contract." Tiffany on Sales, 232, 233, and cases cited. In the case of Hinckley v. Pittsburg Bessemer Steel Co., 121 U. S. 264 (7 Sup. Ct. 875, 30 L. ed. 967), Hinckley entered into a contract with the steel company for the purchase of steel rails, to be rolled by the latter, but, in advance of the time fixed for delivery, Hinckley refused to receive the rails. Held: (1) Hinckley was liable in damages for breach of the contract. (2) The steel company was not bound to roll the rails, tender them to him, and thus enhance its damages. (3) The proper rule for the measure of damages was the difference between the cost per ton of making and delivering the rails and the contract price of $58 per ton. The case of Roehm v. Horst (a unan-

imous decision by the Supreme Court of the United States), 178 U. S. 1 (20 Sup. 780, 44 L. ed. 953), seems to be squarely in point. This was a suit for damages caused by the defendant's refusal to accept hops purchased from the plaintiffs and to be delivered in future, the plaintiffs to procure the hops under a sub- contract with third parties. Chief Justice Fuller says: (p. 20) "As to the question of damages, if the action is not premature [held not to be], the rule is applicable that plaintiff is entitled to compensation based, as far as possible, on the ascertainment. of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself. If a vendor is to manufacture. goods, and during process of manufacture the contract is repudiated, he is not bound to complete the manufacture, and estimate his damages by the difference between the market price and the contract price, but the measure of damage is the difference between the contract price and the cost of performance. . . Even if in such cases the manufacturer actually obtains his profits before the time fixed for performance, and recovers on a basis of cost which might have been increased or diminished by subsequent events, the party who broke the contract before the time for complete performance can not complain, for he took the risk involved in such anticipation. *If the vendor has to buy instead of manufacture, the same principle prevails, and he may show what was the value of the contract by showing for what price he could have made subcontracts, just as the cost of manufacture in the case of manufacturer may be shown.* Although he may receive his money earlier in this way, and may gain, or lose, by the estimation of his damage in advance of the time for performance, still, as we have seen, he has the right to accept the situation tendered him, and the other party can not complain. In this case plaintiffs showed at what prices they could have made subcontracts for forward deliveries according to the contract in suit, and the difference between the prices fixed by the contracts sued on and those was correctly allowed." See also Cameron v. White, 74 Wis. 425 (43 N. W. 155, 5 L. R. A. 493) ; Gardner v. Deeds, 116 Tenn. 128 (92 S. W. 518, 4 L. R. A. (N. S.) 740). In Bingham v. Carlisle, 78 Ala. 243-249 (56 Am. R. 28), Clopton, J.,

delivering the opinion, says, "Profits are not excluded because *they are profits,* but when excluded there are no *criteria* by which to estimate the amount with certainty on which the adjudications of courts and the findings of juries should be based." The same doctrine is announced in Griffin *v.* Colver, 16 N. Y. 489, 491 (69 Am. D. 718); 1 Sedgwick on Damages, 24; 2 Sutherland on Damages, 361-362. That the buyer may recover profits for breach of contract by the seller has also been held in Borries *v.* Hutchinson, 18 C. B. (N. S.) 445. In 1 Sutherland on Damages, 195, it is said that one is entitled to recover the profits he would have made, —the contract price, less what he would have to do or expend to earn or otherwise entitle himself to it. See also, upon the subject of "profits generally," 13 Cyc. 51, G. 2.

*Judgment reversed.*