21483.   VIRGINIA LUMBER CORPORATION *et al. v.* WILLIAMSON
TIE COMPANY.

JENKINS, P. J.   1. It is the general rule that where any part of a claim is in good faith disputed, a payment made and accepted in settlement of a bona fide dispute and in discharge of the whole indebtedness is binding accordingly; but this rule could not apply where a payment is not rendered or accepted as in discharge of the whole indebtedness, but is merely a partial payment intended to be credited upon the recognized indebtedness, even though at the time that such payment on the admitted indebtedness is made and accepted the defendant, as maker and acceptor of the draft sued on, accompanied such payment with a statement of account, setting forth two credits claimed by it growing out of the previous transaction, which, together with the amount then paid, left a balance due in the amount of the new acceptance with deferred maturity date then tendered. Such a partial payment admitted to be due was not expressly or impliedly coupled with a condition as to the allowance of the credits then claimed or the acceptance of the tendered bill of exchange maturing at a later date.   Since it appears, without dispute, that the plaintiff promptly declined to accept the tendered bill of exchange representing the balance claimed by the defendant to be due and maturing at a deferred date, the court did not err in ruling against the defendant's claim of accord and satisfaction.

2. This was a suit on an accepted bill of exchange.   The defendant pleaded that the amount sued for was not due or owing, because of an alleged accord and satisfaction, and further set forth, by way of counterclaim, damages alleged to have accrued on account of the plaintiff's breach of an alleged contract for the purchase of certain cross-ties.   The court directed a verdict in favor of the plaintiff for the amount of the acceptance, less certain admitted credits, and the defendant excepted. With reference to the counterclaim by the seller for damages on account of the alleged failure of the purchaser to take certain cross-ties, the question hinges upon whether or not there had been a valid agreement between the parties for the purchase thereof, and, if so, whether, under the undisputed evidence, there had been a breach by the purchaser on account of its failure to accept cross-ties as tendered in accordance with the terms of such agreement.   The parties had originally entered into an oral agreement for the purchase of six to eight thousand cross-ties. Subsequently and before any cross-ties were shipped, an order, designated as "order No. 108," for from twenty to twenty-five thousand cross-ties, of specified sizes at named prices, was written and signed by the purchaser and mailed to the seller.   On receipt of this order the seller, by letter, called the purchaser's attention to the fact that the previous oral agreement covered only six to eight thousand cross-ties, instead of twenty to twenty-five thousand.   Subsequently, in a telephone conversation, the seller asked the purchaser what to do with the signed order, and the buyer replied "go ahead and keep it."   Thereafter the purchaser gave written instructions for shipment of the ties, referring therein to "order No. 108."   It indisputably appears that more than ten thousand cross-ties were delivered, accepted, and paid for, and, according to the

testimony of the seller, the remaining 10,000 ties, meeting the specifications of "order No. 108," were tendered to the buyer and were rejected, to the seller's injury and damage in the amount claimed. *Held:* Where a contract is such as, under the statute of frauds, must be in writing, and there is nothing to take it out of the provisions of that statute, the writing, in order to evidence mutuality, so as to render the agreement binding, must be "signed by the party sought to be charged therewith or some person by him lawfully authorized" (Civil Code (1910), § 3222), and must also be signed or otherwise accepted by the opposite party, the object of the signature being to show mutuality or assent. However, except in cases where by the terms of the instrument itself it is required, as a condition to its validity, that both parties shall sign, when the party sought to be charged has signed, mutuality may be inferred by whole or part performance of an entire contract by the opposite party. *Aspironal Laboratories Inc.* v. *Rosenblatt*, 34 *Ga. App.* 255 (129 S. E. 140); *Retailers Service Bureau* v. *Newman, Frierson & McEver Co.*, 40 *Ga. App.* 185 (149 S. E. 89). This is true since such whole or partial performance of a contract "will satisfy the requisites both of mutuality and of the statute of frauds." *Fontaine* v. *Baxley*, 90 *Ga.* 416, 425 (17 S. E. 1015). Accordingly, since the evidence was in conflict as to the character and grade of the cross-ties tendered for delivery, and since it can not be said as a matter of law that the contract as sued on by the defendant seller in its counterclaim was unilateral in that the agreement was signed by the opposite party and partly performed by the seller by shipments specifically made thereunder, it was error for the court to direct a verdict in favor of the plaintiff and against the counterclaim of the defendant, the seller having further testified to compliance with the provisions of the Civil Code (1910), § 4131 (2), with reference to the disposition of the rejected ties.

3. Since the written agreement specifically provided that the ties sold should meet the specifications of the New York Central Lines, these specifications were properly admitted in evidence upon proof submitted that the writing offered contained "the present New York Central specifications." *Judgment reversed. Stephens and Bell, JJ., concur.*

DECIDED DECEMBER 18, 1931. REHEARING DENIED FEBRUARY 11, 1932.

*Cobb & Bright, F. S. Mackall,* for plaintiffs in error.
*Hitch, Denmark & Lovett, R. W. McDuffee,* contra.

ON MOTION FOR REHEARING.

By a motion for rehearing it is insisted by counsel for the plaintiff that the contract sued on by the defendant in its counterclaim amounted merely to an unaccepted offer to buy, and was, therefore, lacking in mutuality; that in considering cases of this kind the distinction between mutuality of assent and mutuality of obligation must be kept clearly in mind; and that our courts are committed to the proposition that a bilateral contract must contain mutuality of

obligation, and if one party is bound and the other is not, though both assent, there is no contract.

Our courts are also committed to the doctrine, as set forth in the original decision in this case, that "whole or partial performance of a contract will satisfy the requisites both of mutuality and of the statute of frauds." See the three cases cited supra. The case of *Chickamauga Mfg. Co.* v. *Augusta Grocery Co.*, 23 *Ga. App.* 163 (98 S. E. 114), is not in conflict with the rulings made in the cases just cited. In that case the defendant had forwarded to the plaintiff an order for 250 gross of a described commodity, "to be used as ordered within 12 mos. from date." The plaintiff did not accept the order, either orally or in writing, and it was not alleged that the goods were ever manufactured in accordance with the terms of the order, or ever tendered or delivered by the plaintiff. After the order was entered the defendant ordered out 45 gross of the commodity, but without specifying that it was under the previous unaccepted order. It later notified the plaintiff that it would not accept the remaining 205 gross. There was no averment in the petition that the shipment was made under the terms of the order as given, and the court held that there had been no acceptance of the defendant's offer to buy, made prior to its revocation, such as would bind the plaintiff, and there was, therefore, no binding contract between the parties.

In the instant case, according to the evidence, there had been a parol contract between the parties for the sale of six to eight thousand cross-ties at specified prices. Thereafter the plaintiff sent to the defendant an order for twenty to twenty-five thousand cross-ties, the same being plaintiff's order No. 108. Upon receipt of this order the defendant, by letter, called the plaintiff's attention to the fact that the previous oral agreement covered only six to eight thousand cross-ties, instead of twenty to twenty-five thousand. Subsequently the plaintiff told the defendant to "go ahead and keep" the order No. 108, and thereafter gave written instructions for the shipment of ties, specifically referring therein to the written order No. 108. There was no evidence that in any of the conversations between the parties, or in the exchange of letters, the defendant advised the plaintiff of any unwillingness to sell twenty to twenty-five thousand ties as ordered, and the testimony shows without dispute that more than the original maximum of eight

thousand ties, to wit, more than ten thousand ties, were delivered, accepted and paid for, partly at least, in compliance with the written shipping instructions referring to "order No. 108," and, according to the evidence for the defendant, additional ties up to the minimum number specified in the order No. 108, and of the character and grade prescribed therein, were tendered to the plaintiff. The president of the plaintiff company himself testified that after the forwarding of order No. 108 and the receipt of the defendant's letter calling attention to the fact that the previous oral understanding covered only six to eight thousand ties, he "let it [the letter] stand as written;" that "we accepted shipments on that order 108 after that. That was the only order that he had, but he accepted only 6,000 to 8,000, according to his letter. We were buying under order 108. All the shipments that we took from him from December 10, 1929, up until May, 1930, were under that order, because he only had the one. We accepted shipments from him with invoice referring to order 108. After that letter and telephone conversation between us I accepted ties as long as he furnished them, as long as he had any to come up to specification until the order was filled." In these respects this case differs materially from the *Chickamauga Mfg. Co.* case, supra, and the other cases cited in the motion for rehearing. We think the evidence was sufficient to authorize a finding that the plaintiff's written offer to buy had been accepted on the part of the defendant by part performance under the terms of the written offer, by the delivery of at least two thousand ties, made expressly under the new agreement,—more than the maximum number specified in the previous oral understanding, and that there had been a tender of full performance in accordance with the terms of the new contract. For these reasons we think the court below erred in directing a verdict as against the counterclaim.

It is further contended by the motion for rehearing that the court properly directed a verdict as against the counterclaim because there was no evidence to indicate that the defendant seller of the cross-ties had complied with the provisions of the Civil Code (1910), § 4131 (2), relative to giving to the plaintiff buyer notice that the cross-ties contracted for, and which had been rejected, would be sold at the plaintiff's risk. The decisions of the courts of this State are uniform to the effect that the notice required to be given under the code section cited, where the seller of goods which

the buyer refuses to accept and pay for elects to sell them, acting for this purpose as the agent of the buyer, must inform the buyer that the resale is to be made at the risk of the buyer. This is so because the seller, by complying with the provisions of the code, may conclude the buyer as to the amount of his damages, since if he does comply and the resale is had in strict conformity with section 4131, the buyer is bound by the amount realized on resale. But in the instant case the testimony of the defendant seller was to the effect that upon the rejection of the cross-ties, and after negotiations between the parties had failed to result in an adjustment of their contentions as to the grades of the ties, the seller informed the buyer that the bank, which apparently had advanced to the seller money to purchase the ties, was calling for its money, and that the seller would have to sell the ties; whereupon the president of the plaintiff company, the buyer, told the defendant seller to "go ahead and sell them." This, it would seem, would amount to a waiver of the strict notice that the resale would be conducted at the risk of the buyer. Moreover, the remedies provided by the Civil Code (1910), § 4131, are not all inclusive, but cumulative. *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (60 S. E. 279); *United Roofing & Mfg. Co.* v. *Albany Mill Supply Co.,* 18 *Ga. App.* 184 (89 S. E. 177). It appears that the defendant's counterclaim was not specifically for the difference between the contract price of the ties and the amount realized on the resale, but for the amount alleged to have been "lost" by reason of the failure of the plaintiff buyer to accept and pay for the ties, setting forth as elements of such damage, among other things, the difference between the contract price of the ties and the price realized on resale. Accordingly, in view of the testimony for the defendant as to the ties having been offered to various dealers in the commodity before they were finally resold, the jury would have been authorized to infer that the contract price, when offset by the price realized on the resale, represented the damage to the defendant by reason of the plaintiff's breach of the contract, the measure of the damage in such a case being the difference between the contract price and the market price, if the seller had not resorted to the remedy afforded by subsection 2 of section 4131 of the Civil Code (1910), relative to a resale at the risk of the purchaser. *Rape* v. *Rape,* 28 *Ga. App.* 373 (110 S. E. 754).     *Rehearing denied.*