1. The court did not err in overruling general demurrers to both counts of the petition in an action for damages for an alleged breach of a contract, where both counts were alike except for the amount of damages claimed, in the absence of special demurrers as to the measure of damages; but the plaintiff's recovery would be limited to the contract price agreed upon by the parties.
2. The court erred in overruling the special demurrers referred to in the opinion because the allegations attacked by them were immaterial if the defendant had accepted the plants as alleged in the petition; but did not err in overruling other special demurrers.
 DECIDED JANUARY 8, 1949. REHEARING DENIED FEBRUARY 11, 1949.
William LaFara, trading as Hoosier Plant Farms, sued Joseph Campbell Company for damages for an alleged breach of contract, copy of which was attached to and made a part of the petition.
The petition was in two counts. Omitting formal parts, count *Page 570 
one was as follows: "3. That on January 25, 1947, petitioner and defendant entered into a written contract whereunder the defendant agreed to furnish to petitioner tomato seed with which to plant seventy acres of land in Lot of Land 513 of Berrien County, Georgia, said land to be planted in tomato seed for the growing of tomato plants for transplanting, petitioner agreeing to plant, to cultivate and to gather such plants when the same became ready for transplanting, giving to defendant notice when said plants were ready; and at which time, defendant was to have option to purchase the same at and for the sum of $1.50 per thousand. A copy of said contract is hereto attached and made part of this petition and reference is made thereto as same becomes necessary.
"4. The defendant furnished said seed and petitioner accepted and planted the same, and thereafter, properly cultivated and grew said plants and defendant, after having been notified by petitioner, accepted some plants for which plants he paid petitioner, but that on or about the 17th day of May, 1947, petitioner had growing upon said lands 10,000,000 plants which were then ready for delivery under the terms of the contract.
"5. That on said date, one Mr. Allison and another field agent, who were the agents and representatives of the defendant company came to the filed where such plants were growing for the purpose of inspecting such plants, and at such time, there was 10,000,000 of plants ready for delivery, of which fact petitioner notified the defendant and requested defendant to accept or reject such plants, telling defendant that he had an offer for said plants if defendant did not wish to avail itself of its option to purchase.
"6. That such plants were of the kind, quality and character provided in said contract; and in the open market at such time had a market value of $1.85 per thousand.
"7. At the time that such plants were offered to the defendant company and accepted by defendant company, George Webb of Tift County, Georgia, who together with E. L. Webb, was engaged in the plant business under the trade name of `Webb Brothers Plant Company' were in the fields where said plants were being grown and made a bona fide offer to petitioner of $1.85 per thousand, and in addition thereto, offered to furnish the *Page 571 
labor for the pulling of such plants and to pull and gather the same and prepare the same for shipping.
"8. That your petitioner, relying upon the acceptance of such plants by the defendant company and that notice to him not to sell any of said plants that they would take them all and recognizing that defendant company had an option thereon, petitioner refused to sell such plants to Webb Brothers Plant Company or to sell them to other persons.
"9. That said Webb Plant Company at the time, was ready, able and willing to purchase at least 3,000,000 of said plants and would have purchased that amount and have paid petitioner at the rate of $1.85 per thousand; and because of the demand for the remaining plants, petitioner could have sold all of them for $1.85 per thousand.
"10. That although petitioner complied with his obligation under said contract in every particular and offered the same to defendant and relied upon the defendant's agreement to accept and pay therefor, the defendant failed and refused to take subsequent thereto only 833,900 plants, leaving plants in excess of 9,000,000 which became a total loss to your petitioner.
"11. That but for the acceptance of said plants and the refusal to take the same, petitioner could have sold the same for $1.85 per thousand, thereby causing your petitioner a loss of $16,650.
"12. That plants by their nature were perishable and can be pulled for transplanting at the exact stage when they are ready for transplanting, and if not pulled at such time, become unfit to be used as plants, such facts being known to the defendant company, and although such facts were known to defendant company, acceptance of delivery was refused by defendant company and such plants became totally and absolutely worthless, all to the injury and damage to your petitioner."
Count two was the same as count one except paragraph 11 which was as follows: "11. That by reason of the acceptance of such plants that defendant became indebted to your petitioner for the amount which he had agreed to pay, towit, $1.50 per thousand amounting to $13,500.00."
The material parts of the contract were as follows: "1. Campbell shall furnish to Grower (F. O. B. Camden, New Jersey, *Page 572 
transportation charges collect) for 1947 planting a quantity of tomato seed, sufficient in Campbell's opinion to plant the above acreage of tomato plants. Campbell shall not be responsible in any way for the germination, variety, quality or productiveness of seed furnished.
"2. From such seed, Grower shall during the 1947 season grow, according to the best farming practices, on clearly staked out and identified lands which have been specifically approved for tomato plants by the Georgia Department of Entomology, the above acreage of tomato plants. Grower shall cultivate, fertilize, spray, pull and handle such tomato plants in accordance with methods approved by Campbell and in accordance with 1947 Regulations for the Production of Georgia Certified Tomato Plants issued by the Georgia Department of Entomology. Immediately after pulling, Grower shall sell or offer to sell all such tomato plants to Campbell.
"3. Grower shall keep Campbell informed of the quantity of tomato plants grown hereunder that are and will be ready for pulling and delivery at particular times and Campbell shall have an option to purchase all or any portion of them. At times specified by Campbell, Grower shall pull and forthwith deliver such tomato plants as Campbell has indicated a desire to purchase to Campbell at its Packing Sheds, where Campbell will sort out, receive and pack for shipment such of the tomato plants as are, in Campbell's opinion, suitable. Each container delivered by Grower shall bear an official certification by the Georgia Department of Entomology stating that all tomato plants contained therein comply in all respects with the 1947 Regulations for the Production of Georgia Certified Tomato Plants, the pulling, handling, and otherwise preparing of tomato plants for delivery; the timing of these operations; and the type, size and quantity of containers and packing materials; shall all be subject to Campbell's approval.
"4. Grower shall pull all tomato plants grown hereunder at the appropriate stage of maturity to produce stocky, well hardened plants and he shall eliminate in the field all tomato plants which are less than six or more than nine inches tall. Notwithstanding any inspection or approval of Grower's crop or methods, Campbell shall not be responsible for loss of or damage to Grower's *Page 573 
tomato plants and may, without obligation to pay therefor, reject any tomato plants which do not conform to this contract, which are damaged, which are affected by decay, early blight, bacterial canker or other disease, or which in Campbell's opinion are otherwise unsuitable. Campbell's determination of suitability shall be conclusive.
"5. Grower covenants and agrees that:
"(a) He will plant on the staked out and identified acreage referred to above only seed furnished by Campbell and will not sell, give away, exchange or otherwise dispose of such seed.
"(b) He has not sold or contracted to sell and will not sell or contract to sell to others any tomato plants grown during 1947 on the staked out and identified acreage referred to above unless and until such tomato plants have been offered to and refused by Campbell.
"6. Campbell's representative may at any time during 1947 enter upon Grower's lands to examine the crop, the soil, the pulling and handling operations, or to take soil samples.
"7. Payment for all tomato plants accepted by Campbell, less any sums due Campbell from Grower shall be made ten (10) days after acceptance by Campbell at the rate of $1.50 Dollars and Cents per 1,000 tomato plants. Campbell's count of accepted tomato plants shall be conclusive."
The defendant demurred generally to the petition as a whole and to both counts thereof, and specially to certain paragraphs in both counts. The court overruled the demurrers and the defendant excepted.
We construe the petition in this case as a claim for damages arising from an alleged breach of contract. It discloses the terms and character of the contract, how and in what manner there was a breach thereof, and the specific injury or damages flowing from the breach. It shows with some degree of precision how the alleged damages directly or logically resulted from the alleged breach. See Harrell v. Southern Railway Co.,14 Ga. App. 451 (81 S.E. 384); Columbian Mutual Life Ins.Co. v. Carter, 58 Ga. App. 150 (197 S.E. 925). *Page 574 
The remedies of the seller on default of the buyer provided in the Code, § 96-113, do not "exclude the pursuit of a different remedy by the seller, where a purchaser refuses to take and pay for goods bought, and where, under the facts of the case, none of the three methods of procedure mentioned in that section is available." Carolina Portland Cement Co. v. ColumbiaImprovement Co., 3 Ga. App. 483 (60 S.E. 279). Under the above ruling as applied to the allegations of the petition in this case, the plaintiff was not restricted to the remedies provided in the Code section cited.
Count one is based on the theory that the defendant breached the contract by refusing to take delivery of the plants and pay for them, after having accepted them, and that the plaintiff's damages are $16,650, the price at which he could have sold the plants to another person. If the defendant accepted the plants it would not be liable in damages for more than the contract price even though they could have been sold to someone else at a higher price. There is no special demurrer to the allegations as to the amount of damages claimed in count one, and "A petition which alleges an improper measure of damages can not for that reason be dismissed on general demurrer." James v. Dayton Rubber Mfg.Co., 57 Ga. App. 511, 513 (196 S.E. 298). But under our construction of the petition there can be no recovery of damages over and above the contract price for the plants agreed upon by the parties. "Where a contract has been broken the law seeks to give such damages as will put the injured party in the same position as if the contract had been kept." Albany PhosphateCo. v. Hugger Bros., 4 Ga. App. 771 (62 S.E. 533). "If the contract is for the sale of goods to be manufactured or otherwise procured by the seller, and the buyer refuses to accept, or gives notice that he intends to refuse acceptance, so that the seller is excused from procuring and tendering the goods, he will be entitled to such damages as will put him in the same position as if he had been permitted to complete the contract." GeorgiaPower Light Co. v. Fruit Grower's Express Co., 55 Ga. App. 520
(190 S.E. 669).
The special demurrers to the allegations in paragraph 5 in count two that the plaintiff told the defendant he had an offer for said plants if defendant did not wish to avail itself of the *Page 575 
option to purchase, and to paragraphs 7 and 9 of said count, should have been sustained. This is so because under the allegations that the defendant had accepted the plants it is immaterial whether the plaintiff could have and would have sold to some other party. The court erred in overruling the special demurrers pointed out, but all other special demurrers to said count, including those relating to the date the plants were accepted, and the agent of the defendant accepting them, and how the defendant accepted them, and the quantity and size of the plants, were properly overruled.
Judgment affirmed in part and reversed in part. Sutton, C.J., and Felton, J., concur.