## WESTERN UNION TELEGRAPH COMPANY v. L. HEARNE.

### No. 1015.

1. **Telegraph Company—Evidence of Title to Land in Action for Damages.**—In an action of damages against a telegraph company for error in transmitting a message, by reason of which plaintiff's lands were sold under a trust deed to other parties at a sacrifice, parol evidence by plaintiff, stating merely that he owned the lands and was in possession thereof, is insufficient.

2. **Same—Possession as Evidence of Title.**—Proof of actual possession is usually sufficient evidence of title in cases of this kind, but the evidence should show the facts and character of the possession, and not merely the conclusion of the owner that he has possession.

3. **Certified Copies of Recorded Deeds.**—As predicate for introduction of certified copies of a deed duly recorded, an affidavit in words of the statute is sufficient.

4. **Same—Evidence of Mitigation of Damage—Burden of Proof.**—The burden of proving that plaintiff, after the forced sale, repurchased his lands at a less price than the damages he claims, was on the defendant company, and it should have developed the amount of the price paid on such repurchase.

5. **Same—Duty of Injured Party to Prevent Further Loss.**—Plaintiff should have alleged and proved that he was unable to obtain the money from other sources to discharge the debt which, owing to the mistake in transmitting the telegram, his default in the nonpayment of the interest had caused to mature, and thereby have prevented the sacrifice of his mortgaged lands.

6. **Same—Deposit of Message as Completion of Contract to Notify.**—Where loan agents at W. agreed with H. that if by a given date he would notify them there that he had placed subject to their order the money due on a loan, they would forbear sale of the mortgaged lands, the deposit by H. of such a message, duly addressed, in a telegraph office at B., is not such a compliance with a completion of the agreement as will invalidate a sale of the land by the agents, the message having been wrongly transmitted.

7. **Same—Right to Damages Not Defeated.**—The fact that the loan company, in violation of the agreement to forbear, was already taking steps to sell the lands, would not defeat H.'s right to damages against the telegraph company, since such violation could not have deprived him of his rights under the agreement had the notice by him been duly given.

APPEAL from Callahan.   Tried below before Hon. T. H. CONNER.

*Field & Homan*, for appellant.—1.  The suit being not for a trespass upon the possession, but for the value of the land, upon an allegation of title in Hearne and subsequent loss of the title, the written muniment of title was the best and the only competent evidence to prove ownership in Hearne.   Phillips v. O'Neil, 87 Ga., 727.

2.  It being shown by the uncontradicted evidence that the mortgage company had, prior to January 28, 1887, elected to declare plaintiff's debt matured, and instituted foreclosure proceedings, and that the sale of the lands was subsequently made under the trust deed pursuant to said action of the mortgage company, and not in consequence of the error in the message of January 28, the defendant telegraph company is not liable for damages resulting from such sale; and the evidence of plaintiff tending to show that such action of the mortgage company was in violation of an agreement with him to wait until January 28, the issue thus raised should have been submitted to the jury under appropriate instructions.   Tel. Co. v. Andrews, 78 Texas, 305; Parker v. Chancellor, 78 Texas, 524.

3.  If the mortgage company, through its agents, had agreed with plaintiff Hearne not to exercise its option to declare the debt matured, nor foreclose its trust deed, if plaintiff would by January 28, 1887, deposit $500 in bank at Baird, and notify Chase at Fort Worth that he could draw for it, the deposit of the money by plaintiff, and the delivery of the message to the telegraph company at Baird for transmission on January 28, 1887, addressed to Chase at Fort Worth, was an acceptance of the proposition of the mortgage company, and a completion of the contract between plaintiff and said company; and the sale subsequently made under the trust deed was inoperative to divest plaintiff of the title to the lands.   Gray's Com. by Tel., secs. 112, 115; Abb. Trial Ev., sec. 289; Thomp. Electricity, sec. 477; Trevor v. Wood, 36 N. Y., 307; Parks v. Comstock, 59 Barb., 16; Machine Works v. Chandler, 56 Ind., 575.

*John Bowyer*, for appellee.

HEAD, ASSOCIATE JUSTICE.—Appellee instituted this suit in the court below to recover of appellant damages alleged to have resulted to him from an error in the transmission of a telegraphic message.

The message as delivered to appellant was as follows:

"BAIRD, TEXAS, January 28, 1887.

"*To E. E. Chase, Fort Worth, Texas:*

"Return note left by Hearne; draw for five hundred dollars.

"A. G. WILLS, Cashier."

The message as transmitted and delivered to the addressee was as follows:

"BAIRD, TEXAS, January 28, 1887.

*"To E. E. Chase, Fort Worth, Texas:*

" Return note left by Hearne; order for five hundred dollars. ·

"A. G. WILLS, Cashier."

Appellee alleges in his petition, that at the time he delivered this message to appellant for transmission he was indebted to the Dundee Mortgage and Trust Investment Company, of Dundee, Scotland, in the sum of $25,000; that the interest upon this loan was evidenced by certain coupons which were payable semi-annually, and that by the terms of the contract default in the payment of any of these interest installments rendered the principal sum due; that this debt was secured by a deed in trust upon something over 13,000 acres of land, which authorized the trustee to sell the same upon default on the part of appellee in the payment of any of the interest coupons as above set forth; that at the time of the delivery of said message to appellant one of said interest coupons had matured, but said mortgage company, through its agent, E. E. Chase, to whom the message was directed, had agreed that if appellee would, on or before January 28, 1887, deposit in the bank at Baird the sum of $500 to pay the same, and notify him (the said Chase) of said deposit, and that he was authorized to draw therefor, the said mortgage company would waive its right to declare the principal debt due for the nonpayment of said interest installment, and that this was the purpose intended to be accomplished by the sending of said message; that appellee was the owner of the land upon which said mortgage was so given; that appellant was notified of the purpose of the message, and of the damage that would likely result from its nondelivery, at the time it was delivered to it; that by the error in the transmission of said message appellee failed to secure the waiver contracted for with said mortgage company, and the said mortgage was foreclosed, and the land covered thereby was sold thereunder for something over $28,000 less than its value, by reason of which he sustained damage in said sum.   For said last named amount appellee was given a verdict and judgment in the court below, from which this appeal is prosecuted.

The question is not presented by the record for our consideration as to whether or not the message as transmitted and delivered to Chase was in substance the same, for the purpose intended to be accomplished thereby, as the one delivered by appellee to appellant; nor is there an assignment challenging the sufficiency of the evidence to sustain the verdict rendered, by reason of the failure on the part of appellee to allege and prove inability on his part to prevent the sacrifice

of his land by obtaining the money to discharge the debt from some other source.

It will be observed from what we have already said, that the gist of the plaintiff's cause of action was the allegation that he was the *owner* of the land described in his petition, the title to which he claims to have lost through the negligence of appellant. To prove this allegation, appellee was permitted by the court below to testify as follows: "I owned and was in possession of the lands at time mortgage was executed, and at time same was sold on February 23, 1887." This is all the evidence of title in appellee to·this land disclosed by the record. That part of the testimony of this witness to the effect that he owned this land was objected to by appellant, and bill of exceptions duly saved. We are of opinion that this evidence should have been excluded.

In Gilbert v. Odum, 69 Texas, 673, it is said: "There was error in permitting the witness King, in answer to a question, to state that he did not and never did own any interest in the property in controversy, for the reason that title or the want of title in real estate is a conclusion that the law draws from a given state of facts." The .reasoning of our Supreme Court in numerous cases upon the question of the inadmissibility of declarations on the part of claimants to land to prove their title, we think also leads to the same conclusion. Mooring v. McBride, 62 Texas, 309; Herndon v. Davenport, 75 Texas, 462; McDow v. Rabb, 56 Texas, 154; Hickman v. Gillum, 66 Texas, 314.

In this last case, while the declarations were admitted for the purpose therein indicated, it is said: "Whilst the fact that a party asserted that land belonged to her would be no evidence of title, yet it would be the best possible evidence that she claimed it."

In this case it was necessary for appellee to prove not only that he claimed the land, but that he owned it, and lost the title thereto through the acts of appellant. We do not by this, however, mean to be understood as holding that it would be incumbent upon appellee to . show a good paper title to each particular tract, if he can prove his allegation of ownership by other competent evidence. Actual possession of land is generally held to furnish prima facie proof of ownership in the possessor. Express Co. v. Dunn, 81 Texas, 85; Lewis on Em. Dom., sec. 440, et seq.; 2 Greenl. on Ev., sec. 613; Winchester v. The City, 58 Wis., 350.

This character of evidence has been frequently held sufficient to authorize the recovery of the value of land taken for public uses, as will be seen from the above authorities, and we see no reason why it should not be sufficient in this case.

The possession referred to, however, is an actual possession, and it is apparent that only this kind of possession will answer the purpose, because constructive possession accompanies the real title, and in the

nature of things could not be shown without first proving in whom the title is by other evidence. It has therefore been held that, in cases of this kind, where the one suing for the damage was out of ·possession, it was incumbent upon him to trace his title to the sovereignty of the soil. City of Lafayette v. Wortman, 107 Ind., 404.

In the case at bar, it will be observed that the witness not only stated that he owned the land, but also stated that he was in possession of it; but he does not disclose the nature of this possession, and we have had considerable difficulty in deciding as to whether. or not this general statement should he held sufficient to render the improper admission of the statement of ownership immaterial, in the absence of rebutting evidence. We have finally concluded, however, that, in view of the importance of the question of title in this case, we would not be justified in holding the error of the court above indicated to have been without prejudice to the appellant. It may be that, after the court ruled that appellee could prove his title by his verbal statements, appellant considered it useless to develop by cross-examination or otherwise the nature of his possession, as appellee would by the court be held entitled to recover as owner, whether he was in actual possession or not.

Again, we are inclined to the opinion that possession itself, for the purpose for which it was admitted in this case, was rather the statement of a conclusion which the law would draw from given facts than the statement of a fact itself. Opinions of witnesses as to what would constitute possession might greatly vary, under a given state of facts, and when this is relied upon as evidence of ownership, the facts should be stated, and leave it for the court and jury to decide as to what they prove. It is not shown by the record that any of the land was inclosed, or had improvements of any kind upon it.

We find no error in the action of the court in admitting evidence of the habits and reputation of appellant's agent to whom the dispatch was delivered. It is true he did not himself transmit the message, but he is the one to whom it was read, and if there was difficulty in reading it, he should have seen that it was explained to the operator intrusted with the duty of sending it. The evidence was admissible as tending to prove the alleged negligence of appellant.

There was no error in permitting the writer of the message to testify, that the word in question was intended for *draw*, and not *order*. He so read it to appellant's agent.

We find no error in the action of the court in admitting in evidence certified copies of the deed of trust from Hearne to Sommerville, and of the deed from the trustee thereunder to Ross. The bill of exceptions shows that the suppletory affidavits were in the words of the statute. This was sufficient where certified copies and not oral evidence of the contents of the instruments were relied upon. Foot v.

Silliman, 77 Texas, 268. It was not necessary that the suppletory affidavits should be filed before the commencement of the trial. Ross v. Kornrumpf, 64 Texas, 390; Parks v. Caudle, 58 Texas, 216.

We are of opinion, that the court did not err in refusing to instruct the jury, that if the mortgage company had elected to declare its debt due prior to January 28, 1887, appellee could not recover. Appellee's cause of action was based upon the allegation that he had a valid contract with the mortgage company, by which it had agreed to waive its right to declare the princpal debt due if he would deposit the amount necessary to discharge the past due interest in bank and notify it to draw therefor, on or before the date above named. If appellee had such contract and complied with its terms, the fact that the mortgage company may have violated its part thereof would not deprive him of his rights thereunder. In such case, having complied with his part of the contract, he would have the right to compel it to comply with its part thereof. The deposit of the money and the giving of notice to Chase were both necessary to secure to appellee the benefits contracted for by him. It was the loss of this contract, therefore, which appellee claims to have sustained by the error committed by appellant in the transmission of this message.

We are of opinion, that the court did not err in refusing to charge the jury that appellee could not recover herein, because the evidence showed that he had repurchased the land, and did not show the price paid by him therefor. If appellant relied upon this evidence to reduce the damage, we think it was incumbent upon it to make this proof, appellee having shown a prima facie case by introducing evidence of the sale of the land, and its value. The writer is also not clear but that it was incumbent upon appellant not only to make this proof, but also to lay the proper predicate for its introduction in its pleading. Railway v. Godair, 22 S. W. Rep., 777.

The contract alleged by appellee was, that he was to deposit the money in bank at Baird and notify Chase at Fort Worth. The court, therefore, did not err in refusing to instruct the jury that the deposit of the message with the telegraph company at Baird was a compliance with his contract. It is not the case of a proposition made by one party, which is accepted by the other, by the deposit of a letter in the postoffice or a telegraphic message with a telegraph company.

It is not necessary for appellee to prove that he had been evicted from the land. It was sufficient for him to show that he had been deprived of the title thereto, with the other necessary facts, to render the appellant liable.

Appellant requested the court below to give the following charge to the jury: "If you believe from the evidence that plaintiff knew of the proposed foreclosure by the Dundee Mortgage and Trust Company before the sale and made no effort to prevent said sale by legal steps,

he is guilty of such contributory negligence as precludes any recovery by him of damages on account of such foreclosure, and you can not, in that event, find for plaintiff any such damages.''

If appellee had failed to comply with his part of the contract under which the mortgage company agreed to waive its right to declare the principal debt due, there were no *legal steps* such as were meant in this charge that he could have taken to stop the sale. The charge as requested was also perhaps not free from objection in other respects. Notwithstanding the telegraph company may have been guilty of negligence in failing to properly transmit this message, it was appellee's duty to use all reasonable efforts to render the damage resulting to him from such negligence as light as possible.

In the case of Telegraph Company v. Sheffield, 71 Texas, 577, it is said: "It is elementary that a party claiming damages must not be in fault in contributing to them by his own want of proper care, and such care must extend to the protection from further loss after the act complained of." Also see Jones v. George, 61 Texas, 362, where it is said: "If, however, notwithstanding the breach of contract, the appellant, by the use of ordinary care, and at reasonable expense, could have avoided the loss in whole or in part, then the loss which might have been arrested by the use of such care ought not to be recovered. The rule is thus stated: 'The same principle which refuses to take into consideration any but the direct consequences of the illegal act is applied to limit the damages, where the plaintiff by using reasonable precautions could have reduced them,' " etc.

Ordinarily, for the breach of a contract to loan money, the measure of the damages would be the difference in the rate of interest to be paid for such loan and that required to be paid for a like loan from other parties (2 Sedgwick on Damages, section 622); and the same rule should apply to the breach of a contract for an extension of time on a loan already made. To recover special damages for the breach of such a contract, the peculiar facts causing the same should be alleged and proven, coupled with notice to the party guilty of the breach, and also coupled with evidence that all reasonable means had been adopted to lessen the damages resulting from such special causes.

In this case, appellee should have alleged and proven that he was unable to obtain the necessary funds from other sources to discharge the debt which by his default in the nonpayment of the interest thereon had been caused to mature. No such allegations or proof are found in the record in this case, and we are of opinion that, while the charge as requested should not have been given, it would have been proper for the court to have delivered to the jury an appropriate instruction upon this phase of the case.

We think the motion for a new trial, on the ground of newly discovered evidence to show that the wife of appellee, who joined in the ex-

ecution of the trust deed, was dead at the time of the sale of the land thereunder, was properly overruled, because failing to show sufficient diligence. It will therefore be unnecessary for us to decide as to whether or not, if this proof had been made on the trial in the court below, appellee would have been limited to the recovery of damages for the loss of his interest in the land, he being by such death made a tenant in common therein with the children of his deceased wife.

What we have said sufficiently indicates our opinion upon the other assignments of error.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered April 25, 1894.