## WESTERN UNION TELEGRAPH CO. v. HAYNES. (No. 7695.)*

(Court of Civil Appeals of Texas. Galveston. June 8, 1922. Rehearing Denied June 22, 1922.)

**1. Telegraphs and telephones ⟨⟩56(4)—Third person's interest shown by message.**

A telegram stating that, "unless Haynes loan is retired previously, will sell collateral 10 o'clock Wednesday, November 4th," sent on November 3d by a bank, a pledgee of corporate stock, to a bank which had agreed to advance money to pay off the pledgor's note and redeem his stock, *held* sufficient to put the telegraph company on notice that failure to make timely delivery would probably result in a sale of the stock at a loss to the pledgor.

**2. Telegraphs and telephones ⟨⟩66(4)—Evidence held to show delay caused forced sale of collateral.**

Evidence *held* to show that, if a telegram sent by a bank, a pledgee of corporate stock, to a bank which had agreed to advance money to pay off the pledgor's note and redeem his stock, had been delivered with reasonable promptness, a forced sale of the stock at a loss would have been prevented.

Appeal from District Court, Austin County; M. C. Jeffrey, Judge.

Action by R. B. Haynes against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 231 S. W. 361.

Hume & Hume, of Houston, and Albert T. Benedict, of New York City, for appellant.
C. G. Krueger, of Bellville, for appellee.

PLEASANTS, C. J. Appellee brought this suit against appellant to recover damages for the alleged negligent failure of appellant to promptly deliver the following telegram:

"San Antonio, Texas, Nov. 3, 1908.
"To C. T. Sanders, Cashier Sealy National Bank, Sealy, Texas. Unless Haynes loan is retired previously, will sell collateral ten o'clock Wednesday, November 4th.
"[Signed] City National Bank."

The amount of damages sought to be recovered was $2,926, the alleged difference between the market value of certain shares of stock owned by the plaintiff and held by the bank as collateral to secure an indebtedness due it by plaintiff and the sum received for said stock at its forced sale on November 4, 1908. The following are in substance the allegations of the petition:

On August 8, 1908, plaintiff became indebted to the City National Bank of San Antonio in the sum of $3,000, for which amount he executed his note to said bank, payable on demand with 10 per cent. interest from date, and to secure said note transferred and de-livered to the bank 100 shares of the capital stock of the Sealy Mattress Company. Some time in October, 1908, the bank demanded payment of the note, and plaintiff, being unable to meet the demand, applied to Mr. C. T. Sanders, cashier of the Sealy National Bank, for a loan of a sufficient sum of money to pay off said note and redeem the certificates of stock held by the San Antonio bank, as aforesaid. Before any definite arrangements were made with Sanders for said loan, the San Antonio Bank agreed with plaintiff and the Sealy Bank that it would carry said loan until November 1, 1908. Plaintiff thereafter during the month of October—

"made arrangements with the Sealy National Bank and with C. T. Sanders, the cashier of said bank, to loan him the money to pay off the said note of $3,000 and accrued interest thereon, on or about the 1st day of November, 1908, or at such time thereafter as the said City National Bank of San Antonio demanded the payment of said note; the understanding between the plaintiff and the Sealy National Bank and its cashier, C. T. Sanders, being that the said bank, or C. T. Sanders, would see that the said note due. the City National Bank of San Antonio, Tex., would be taken up and carried by the said C. T. Sanders or the Sealy National Bank, or by some other person or institution to be provided by the Sealy National Bank or by C. T. Sanders, cashier as aforesaid. That the said C. T. Sanders, in pursuance of said agreement and arrangement with this plaintiff, made known to the City National Bank of San Antonio its willingness and the willingness of the said C. T. Sanders, cashier aforesaid, to take up said note of plaintiff on or about the 1st day of November, 1908. That said Sealy National Bank and the said C. T. Sanders and the said institution and persons above referred to were able and willing to pay off said note of plaintiff to the said City National Bank of San Antonio, and to carry the said note secured by said certificate of 100 shares of stock in the Sealy Mattress Company for this plaintiff until such time as the plaintiff should become able to take up the same."

The San Antonio bank on November 3, 1908, determined to close out its loan to plaintiff, and in pursuance of its agreement and understanding with the Sealy bank delivered to appellant for transmission to C. T. Sanders the telegram before set out. The telegram was accepted by appellant for transmission, but it negligently failed to promptly transmit and deliver it to the addressee, and it was not delivered to Sanders until 11:20 a. m. on November 4th. In the meantime the San Antonio bank had, at 10 o'clock, or a few minutes thereafter, on the morning of November 4, 1908, sold plaintiff's stock for the sum of $3,074 and applied said sum to the satisfaction and discharge of plaintiff's said note and interest thereon.

"Plaintiff further represents unto the court that, if the defendant company had promptly

delivered the message aforesaid to the said Sealy National Bank, or to said C. T. Sanders, its cashier, the said bank, or the said C. T. Sanders, would have, before 10 o'clock a. m. on the 4th day of November, 1908, paid off the said note of $3,000 due the said City National Bank of San Antonio, Tex., and would have taken over the same, together with the certificates of stock in the Sealy Mattress Company, and would have carried the same or caused the same to have been carried for this plaintiff to such a time as the plaintiff would have been able to pay said note and take up said shares of stock, and that therefore the said certificates of stock aforesaid would not have been sold at a great sacrifice, as was done, in satisfaction and payment of said $3,000 note by the City National Bank of San Antonio, Tex."

The market value of the stock is alleged to have been $6,000, and the prayer is for recovery of $2,926, the difference between said alleged market value and the amount for which the stock was sold.

The defendant answered by a general demurrer and a general denial. The trial in the court below without a jury resulted in a judgment in favor of the plaintiff for the amount claimed by him.

The facts alleged in the petition in regard to plaintiff's indebtedness to the San Antonio bank and his transfer and delivery to said bank of the certificates of stock to secure said indebtedness, and also the facts as to the demand for payment of the note, the subsequent agreement by the San Antonio bank with the Sealy bank to hold the note until November 1, 1908, the sending of the telegram on November 3d, and the failure of the defendant to deliver it before 10 o'clock on the morning of November 4th, were shown by the undisputed evidence. It was also shown that Sanders had agreed with the plaintiff that he would furnish or procure the money to take up the loan in consideration of the interest which plaintiff agreed to pay for said money. Sanders testified that he notified the San Antonio bank that he had promised plaintiff to take up the note and collateral, and carry it or get some one else to do so, but that he had no definite agreement with said bank as to paying or taking up the note. He further stated that, while he had no positive promise from the San Antonio bank that it would notify him before offering the stock ·for sale, he had requested the bank to do so, and felt confident it would show him that courtesy as a brother cashier.

In the matter of procuring the money with which to take up the note, Sanders testified that he had made arrangements with the New Ulm State Bank for $2,000, and intended to ask plaintiff's father to advance the balance required to prevent the sacrifice of the collateral; that he had a right to believe that plaintiff's father would come to his assistance, but if he had failed him he would have made application to the loan committee of

the Sealy bank, and, if necessary, he himself would have taken this balance rather than have permitted the sale of the collateral.

The testimony showing the sale of the stock is meager and somewhat indefinite. W. R. King, vice president of the San Antonio bank, testified that the R. B. Haynes loan of $3,000 was settled by foreclosure of the collateral by which the loan was secured, which collateral consisted of Sealy Mattress Company stock of $100 face value per share; the total face value, as shown by the records of the bank, being $9,000. He further testified:

"I cannot give details of the foreclosure, but said collateral was sold and the proceeds applied to liquidate the obligation. Our files are incomplete. * * * We quite likely did notify R. B. Haynes that the note was due. We probably did notify R. B. Haynes that we would sell the collateral, before we sold same. I do not know when we last notified R. B. Haynes that the note must be paid. As to whether we had notified either the Sealy bank or C. T. Sanders or R. B. Haynes of our purpose to sell the collateral prior to sending the telegram, my impression is that the telegram conveyed this information. We notified them of said purpose by telegraph to the Sealy National Bank. I do not know when I had last seen R. B. Haynes prior to November 3, 1908. I cannot state when I had last communicated with him, prior to November 3, 1908, in reference to the payment of said note. This matter is ancientated and our records are incomplete. As to why we did not offer longer time in our telegram than we did offer for the plaintiff to protect his collateral in our hands, we handled the transaction with our usual patience, indulgence, and consideration."

This is all of the testimony in regard to the sale of the stock and the amount realized from the sale. Neither Sanders nor plaintiff made any inquiry in regard to the sale of the stock, and neither knew how, when, to whom, or for what price it was sold. No steps were taken by either to ascertain who held the stock after November 4th, and no attempt was made to redeem it. Plaintiff testified:

"As to whether any effort was made to redeem this collateral after the demand for payment was made, I could not say as to that. I don't know when demand was made, nor what agreement the Sealy National Bank had with Mr. Sanders. I had simply turned the matter over to the Sealy National Bank, and looked to them to protect me. As to when it was I took up the matter with the Sealy National Bank or with Mr. Sanders as to the status of that transaction, I did so immediately upon my becoming aware of the fact that the collateral had been sold in San Antonio. * * * I did not make any effort personally to redeem the collateral. I do not know as a matter of fact whether the collateral was actually sold at public or private sale. I have no idea whether there was a fair price gotten for it or not. I don't know what the price was. I don't know whether the San Antonio bank merely took that

collateral themselves and applied it to the loan or not. They did not send me the note. I think the note was turned over to the Sealy National Bank, or to Mr. Sanders, I don't know whether it was marked paid or not. It is my understanding that the City National Bank of San Antonio applied the proceeds of this collateral in whatever way it was disposed of to the extinguishment of my obligation there, and then sent the note to Mr. Sanders. I don't think Mr. Sanders gave the note to me."

Sanders testified that he had no recollection of making any request of the San Antonio bank in reference to this loan after receiving the telegram on November 4th.

At a former term of this court (212 S. W. 260) we reversed the judgment of the trial court and rendered judgment for the appellant, on the ground that the evidence was insufficient to show a lawful sale of the appellee's stock by the San Antonio bank, and in the absence of such showing it could not be held that appellee had lost his stock as a result of the alleged negligence of appellant, and therefore appellant could not be held liable for the damages claimed by the appellee. The Supreme Court granted a writ of error from our decision, and upon a hearing in that court (231 S. W. 361) reversed our holding and remanded the cause to this court for a determination by us, of other questions presented by the appeal.

[1] The larger portion of appellant's brief is devoted to a discussion of its first assignment of error, which complains of the judgment of the trial court overruling appellant's general demurrer to plaintiff's petition. Appellant argues with much force and earnestness that the petition fails to state a cause of action, because it does not show any notice to appellant, at the time it received the telegram and undertook to transmit and deliver it, that appellee had any interest in the subject-matter of the message and would probably sustain loss or damage if it was not promptly delivered. In support of this contention appellant cites a number of cases, among which are Telegraph Co. v. True, 101 Tex. 236, 106 S. W. 315; Telegraph Co. v. Gotcher, 93 Tex. 114, 53 S. W. 686; Telegraph Co. v. Hearne, 7 Tex. Civ. App. 67, 26 S. W. 478; Hedden v. Schneblin, 126 Mo. App. 478, 104 S. W. 887; and Lumber Co. v. Evans, 167 Ala. 431, 52 South. 843, 29 L. R. A. (N. S.) 194, 140 Am. St. Rep. 47.

[2] We think the facts of this case distinguish it from each of the cases cited by appellant. The language of the telegram informed the appellant that the San Antonio bank held a note due by appellee and secured by collateral in the hands of the bank, and that unless the note was paid the collateral would be sold the next day. The telegram was not addressed to the appellee, but as it concerned his loan, and presumably his collateral, it was obviously sent for his benefit, and the appellant must have so understood it. It seems to us that the telegram, while it did not give appellant full notice of all the facts upon which appellee's claim for damages is predicated, stated sufficient facts to give appellant notice that a failure to make timely delivery of the message would probably result in the forced sale of appellee's collateral, to appellee's loss and damage. Having this notice, we do not think it should be held that the damages claimed by appellee were not such as were reasonably in contemplation of the parties at the time the contract for sending the message was made.

The question is not free from doubt, but our conclusion is that the ruling of the trial court on the demurrer should be sustained, and as we understand the rule followed by our Supreme Court in disposing of cases brought before that court by writ of error, it would have reversed the judgment of the trial court, if it had been of opinion that the general demurrer to the petition should have been sustained. We think the evidence is sufficient to sustain the finding that, if the telegram had been delivered with reasonable promptness, Sanders would, in compliance with his agreement with appellee, have paid the amount due the San Antonio bank, and thus prevented the forced sale of appellee's stock, and appellant's assignments raising the question of the sufficiency of the evidence in this respect cannot be sustained.

There is some evidence that the stock was sold for $2,926 less than its fair market value, and the assignments complaining of the judgment on the ground that there is no evidence to support a judgment for appellee for the sum of $2,926, or for any amount, are overruled. We have considered all of the remaining assignments presented in appellant's brief, and none of them should, in our opinion, be sustained.

It follows that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.