## F. B. COLLINS INV. CO. v. MILLS et ux.
### (No. 8385.)

(Court of Civil Appeals of Texas. Galveston. June 8, 1923. Rehearing Denied Oct. 4, 1923.)

1. Usury ⬦115—Oral evidence not permitted to vary terms of written contract to show usury.

Where an application for a loan, fairly made, constituted the defendant plaintiff's agent to secure the loan, plaintiffs could not show by parol evidence that the application was a device to evade the laws against usury, and that the defendant intended to loan money on his own responsibility.

2. Corporations ⬦673—Permit to do business not admissible to control construction of writing appointing it as agent to make loan.

In absence of fraud, accident, or mistake, where written instrument appointed defendant, a foreign corporation, as plaintiff's agent to obtain a loan, the corporation's permit to do business, authorizing it, among other things,

to make loans, did not require the instrument to be construed as providing for loan by the corporation, and was irrelevant, immaterial, and inadmissible.

Appeal from District Court, Houston County; W. R. Bishop, Judge.

Action by J. T. Mills and wife against the F. B. Collins Investment Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Aldrich & Crook, of Crockett, for appellant. Nunn & Nunn, of Crockett, for appellees.

GRAVES, J. The F. B. Collins Investment Company, a foreign corporation, obtained a permit to do business in Texas authorizing it, among other things not material here:

"To loan money on real estate in the state of Texas, and in any other state in the United States, and to take mortgages on real estate for the security of all its loans in the corporate name of the company; to negotiate, sell and assign said mortgage securities or any other securities held by this company," etc.

Mills and wife sued it in the district court of Houston county for $2,994.50 as damages for an alleged breach of contract to lend them $6,000 on 440 acres of land, averring that the written application for the loan was made on one of the corporation's forms, and that with its knowledge their purpose in borrowing the money was to use it in paying off outstanding purchase-money notes they owed Phillips and Denny thereon and in improving the property; that they complied in all respects with the corporation's requirements and their own agreements as to the conditions precedent to the consummation of the transaction, but that it, for some reason unknown to them then, refused to make the loan, thereby breaching its contract and forcing them—through their consequent inability, despite diligent effort upon their part, to pay the purchase-money notes—to reconvey the land to Phillips and Denny and so to lose the $1,000 cash they had paid thereon in buying it, as well as improvements to the value of $1,950 they had put on the property, which two amounts, added to some small expense items, made their damage aggregate $2,994.50.

In answer, the corporation interposed a general demurrer, nine special exceptions, a general denial of all allegations of the petition, except such as were specially admitted to be true, and then specially denied that it ever agreed to make Mills any loan as charged, but alleged that it had only undertaken to use its best efforts to get one for him and that on or about December 18, 1919, he had appointed it as his agent to procure the $6,000 loan for him, and that in good faith it had endeavored to carry out that contract, allowing him to execute the instruments and

do the various other things he set up in furtherance of that effort, but that on account of unusual financial depression prevailing at the time and through no fault of its own it had failed, whereupon it had executed releases of the incumbrances on the land he had so executed.

By supplemental petition Mills and wife, after itemizing the improvements they had put on it and pleading that they had, between May 4, 1920, and September 10, 1921, unsuccessfully exhausted every means within their power to save the 440 acres by effecting a loan, then pleaded further as follows:

"That if it should appear that plaintiffs signed an application for said loan, and in such application it was stipulated and provided that the defendant was among other things appointed the agent of plaintiffs to secure said loan for plaintiffs, then plaintiffs would aver and show that such stipulation and provision was inserted in said application by defendant for the purpose of enabling defendant· to make an additional charge against plaintiffs and evade the law of the state ·of Texas against usury, and to make it appear that defendant was the agent of plaintiffs, when in truth and in fact defendant did not, and never intended to, act in the capacity of agent of plaintiffs, but to lend the plaintiffs the $6,000 on its own responsibility, and for the purpose of lending money in Texas on real estate the defendant had complied with the laws of Texas relating thereto."

In its supplemental answer the corporation directed a special exception to this averment just quoted, on the ground that it was immaterial, irrelevant, and sought to vary the terms of a written contract. It further denied the truth of the matter so charged, and added that Mills and wife had failed to furnish the kind of title they had agreed to concerning the land; hence the corporation was in any event· neither obligated to make or negotiate a loan for them.

The court overruled all the demurrers and exceptions filed by the defendant, and, after hearing the cause on the evidence, without a jury, rendered judgment in favor of plaintiffs Mills and wife against the defendant corporation for $1,000, with interest thereafter at 6 per cent. per annum and costs of suit, from which decree the corporation appeals.

[1] In the view we take of the cause as presented here, it becomes unnecessary to discuss seriatim or in detail appellant's various assignments of error, but only that group of them upon which its eighth and ninth propositions are based, as follows:

"Eighth· Proposition.—Oral evidence is not admissible to contradict or vary the terms of a written contract.

"Ninth Proposition.—When the uncontradicted evidence in a case shows that the only contract between plaintiff and defendant was a written contract, it is error to admit oral evidence to vary or contradict such written contract."

By the undisputed evidence the only contract between the parties was the written application of Mills for the loan, made out on one of the corporation's forms, dated December 18, 1919, the material substance of which was this:

"Application for First Mortgage Farm Loan.

"I, the undersigned, James T. Mills, of Crockett, postoffice route No. ——, county of Houston, state of Texas, do hereby appoint the F. B. Collins Investment Company, of Oklahoma City, Oklahoma, my agent to procure for me a loan of six thousand and no/100 dollars, ($6,000.00) for the term of 7 years, with interest at 6 per cent. per annum, to be paid annually, secured by first mortgage or trust deed upon the following described real estate in the county of Houston, state of Texas, to wit: 440 acres out of the E. Gossett survey. * * * It is agreed that this loan may be written with two mortgages, one of which may be a commission mortgage. It is further agreed that if all statements herein are not true, or if applicant fails to accept the loan if granted, that applicant will pay all expenses incurred and an amount equal to one-half the commission charged for making said loan. Privilege to pay $200 or any multiple thereof, or the whole amount, at the maturity of any interest payment on and after January 1, 1923, by giving 60 days' notice. * * *

"I do hereby state, under oath, that I am in peaceful possession of the premises above described; that my title thereto has never to my knowledge been questioned or disputed; that there are no judgments unsatisfied, unpaid taxes, or suits pending against me in any court of record of this state or the United States; that there are no unrecorded deeds or mortgages, and that I am neither principal nor surety on any bond which is by law a lien upon said premises, except such as are shown by the abstract submitted, and which I hereby authorize you to pay and discharge. * * * I have answered the above questions, and make these statements for the purpose of securing said loan, and solemnly declare the same to be true in every particular, and I have suppressed no information relative to the property offered as security which would adversely affect its value. I do hereby appoint the F. B. Collins Investment Company my attorney, irrevocably, for and in my name, place, and stead, to procure this loan from any person or corporation, principal and interest payable at such place as lender may direct; my said attorney being hereby authorized by me to receive and transmit any funds for the payment of interest or of principal on said loan as it may from any cause from time to time become due and payable. And I further authorize my said attorney to procure for me fire insurance as herein agreed to be furnished, construing this authority as sufficient application for such insurance, but in no wise obligating my said attorney or legal holder of my note to assume any responsibility for any loss resulting from failure to renew, cancellation from vacancy, or the transfer of the property, or from any cause whatever, all

of which responsibility I hereby expressly assume, and I hereby ratify and confirm all that my said attorney may do in the premises, as fully as if done by myself.

"In witness whereof, I have hereunto set my hand and seal this 18th day of December, 1919.

"[Signature of applicant] James T. Mills.
[Seal.]

"Having carefully examined the application, the examiner's report, and other papers relating to this loan, and with the knowledge we have of the locality in which the property mortgaged is situated, and of the standing, integrity, and ability of the examiner, we fully recommend the loan of six thousand and no/100 dollars, and hereby agree with the purchaser of this loan that we will, without charge or expense to the purchaser or assigns, transmit the borrower's funds, both principal and interest, in accordance with the provisions made by the borrower in the above application, such remittance to be made promptly on date received in New York exchange; also agreeing to have made each year an examination of the county tax books, and to report to the purchaser the condition of taxes and insurance on this property; also promising our assistance in securing the payment of principal, interest, and taxes, and the renewal of fire insurance by the borrower in accordance with the borrower's agreement, and further provided that if, upon examination of the security by the purchaser of the purchaser's inspector or representative within one year from date of such purchase (date remitted), the land, buildings or borrower are found to be otherwise than as represented in within application, or if, in the judgment of said purchaser, his representative or inspector. the loan or title is unsatisfactory for any cause, we will upon demand in writing redeem said loan in cash at face amount and accrued interest. * * *

"The F. B. Collins Investment Company,
"Per J. M. Miller, Vice President."

Appellant's vice president, in general charge of its field branch offices, testified without contradiction that no one had authority or right to change the position of the company as set forth in this application, adding that its terms covered the only agreement it did or pretended to make, and that the charge that they constituted only a method of evading the usury laws of the state was untrue. The only written evidence offered by the appellees as tending to indicate the character of contract existing between the parties, and which appellant objected to on the grounds before stated, was the application of appellant for and the permit to it to do business in Texas, under which its powers were defined as follows:

"To loan money on real estate in the state of Texas, and in any other state in the United States, and to take mortgages on real estate for the security of all its loans in the corporate name of the company; to negotiate, sell, and assign said mortgage securities or any other securities held by this company; to buy real estate when it shall be necessary to do so in order to preserve its security or collect debts owing to it, and sell the same within seven years after acquiring title to the same; to buy and hold all such real estate as shall be proper and necessary to carry on the business for which this corporation is organized so as not to conflict with the Constitution and laws of the state of Texas; and to exercise all prerogatives in carrying out the general powers of this corporation as it is entitled to under the Constitution and laws of the state of Texas for the term of ten years from the date of filing of certified copy of articles of incorporation in the office of secretary of state."

The appellee J. T. Mills admitted that he signed the application in manner and form as given, and did not even aver that there was any fraud, accident, or mistake that induced him to so agree, nor that it did not embody the entire agreement between himself and the corporation touching the matter of the loan. As above indicated, his sole contention in that respect was that, if the application provided that appellant was to act as his agent in procuring a loan for him, it was inserted to enable it to evade the usury laws and to appear to be his agent only, when in truth it never intended to so act as agent, but did intend to lend him the $6,000 on its own responsibility, in proof of which he merely offered appellant's application to and permit from the secretary of state.

In this situation the trial court, over the contention of appellant that the written application for the loan was shown to have constituted the entire contract between the parties and that its terms could not be varied by matters resting in parol, after hearing much oral testimony from the appellees tending to substantiate their original allegations that appellant had undertaken to lend them the $6,000 direct and had breached that agreement to their damage, stated findings to that effect, and based its judgment in their favor upon them.

Appellant attacked these findings on the ground that they were not supported by, but were contrary to, the evidence, and requested findings to the effect that it had acted as the agent of the appellees in taking their application for a loan, and did not consummate it on account of the depressed financial condition existing in the country at the time, which requests were refused, notwithstanding there was uncontroverted testimony in evidence in support of both of them.

We think the court erred, and that, upon the coming in of the undisputed proof showing that the parties fairly made the contract as evidenced by the quoted application for the loan, it should have refused to receive any oral testimony contradictory of its terms and entered judgment in appellant's favor. When by this written agreement the corporation only undertook to act as agent in procuring a loan from others, it was, of course, a directly contrary one to show that by verbal understanding it was to make the loan itself. That such proof is not receivable has so long been settled as not to call. now for

the citation of authority, but it may not be amiss to refer to a few applications of the rule; 22 Corpus Juris, p. 1070; Bruner v. Strong, 61 Tex. 557; Lanius v. Shuber, 77 Tex. 24, 13 S. W. 615; Watson v. Miller, 82 Tex. 279, 17 S. W. 1056.

[2] If there had been averments to the effect that this writing had been obtained from the appellees through fraud, accident, or mistake, and did not represent the true agreement between the parties, a different situation entirely would have been presented. In the absence of any such charge, and as against a direct written instrument so signed between the contracting parties, the recitations in the permit from the secretary of state to appellant to do business in Texas could have had no legitimate bearing upon what its obligations as stipulated in its written contract were; hence should have been excluded as being irrelevant and immaterial.

It appears to be the view of the appellees, as indicated in their brief filed in this court, that the permit from the secretary of state only empowered appellant to make loans in Texas on real estate security, not to merely act as agent in procuring them, and that therefore the contract here involved, notwithstanding its plain terms to the contrary, must be so construed. Obviously that position cannot be sustained.

From what has been said, it follows that the judgment must be reversed; since the facts appear to have been fully developed, and to have shown that appellant did not make with them the kind of contract touching the loan appellees declared upon, it becomes the further duty of this court to render judgment in appellant's favor. That order has accordingly been entered.

Reversed and rendered.