## F. B. COLLINS INV. CO. v. SALLAS et ux.*
### (No. 2887.)

(Court of Civil Appeals of Texas. Texarkana. March 17, 1924. Rehearing Denied March 20, 1924.)

1. Appeal and error ⬤⟶1010(1)—Finding of fact warranted by evidence binding.

Where trial court's finding of fact is warranted by the evidence, it is binding on appeal.

2. Damages ⬤⟶23—Generally all damages within contemplation of parties allowed.

Generally all damages which may reasonably be presumed to have been within contemplation of the parties when they made the contract will be allowed, and, if special circumstances are known to both parties, and they contracted with reference thereto, damages which follow the breach and are occasioned by such special course of things must be awarded.

3. Damages ⬤⟶125—Generally only nominal damages or difference in interest recoverable for nonpayment or failure to advance money.

Generally damages for nonpayment of money or for breach of contract to lend money to pay an incumbrance do not exceed nominal damages, or the difference, if any, between the interest contracted to be paid and that which borrower was compelled to pay to procure the money elsewhere.

**4. Damages ⬦125—For breach of special obligation to lend money, actual damages allowable.**

Where the obligation to pay or lend money is special, as where it is agreed to be done specially to take up and discharge liens on land, damages according to actual injury may be recovered.

**5. Damages ⬦125—Refusal to make agreed loan held to result in loss of title.**

Where landowner had an express agreement with holder of vendor's lien notes to delay foreclosure for a stated period, and no longer, of which fact defendant had knowledge when it agreed to lend money to pay the notes, and owner, believing that the loan would be made and the money remitted, complied with all stipulations to perfect it, defendant's refusal to make the loan, and unreasonable neglect so to notify owner until four months thereafter, and refusal to execute release of deed of trust placed on record by owner to defendant, *held* the immediate cause of loss of title.

**6. Damages ⬦125, 163(4)—Measure of damages for breach of contract to lend money to discharge lien; burden on plaintiffs to show amount of loss.**

Where the loss of title to land was occasioned solely by refusal to lend money as agreed to discharge a vendor's lien on the land, defendant having notice at the time of the agreement to lend, of the purpose and necessity therefor, landowner's actual loss, measured by the difference between the lien and the value of the land at the time it was lost, was recoverable, and it devolved on plaintiffs to show such value.

On Motion for Rehearing.

**7. Appeal and error ⬦690(5)—In absence of contract from record, court cannot determine whether oral testimony varied terms.**

In absence of proof of the contents of an application for a loan, the appellate court cannot determine whether oral testimony varied or tended to vary the written terms.

Appeal from District Court, Houston County; W. R. Bishop, Judge.

Action by J. D. Sallas and wife against the F. B. Collins Investment Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

The suit is by appellees to recover against appellant damages for breach of an alleged contract to advance money to appellees, by way of a loan, to discharge certain vendor's lien notes against land owned by them. The vendor's lien notes were, according to their terms, due and payable; and the owner and holder, after demanding payment of them, agreed with appellees to further extend time of payment to a stated time. As alleged, the appellant, with knowledge of the purpose of the loan, agreed to advance $2,000 to appellees for payment on the notes, and to take their note for that amount, payable ten years from that date, secured by a mortgage on the land. The petition predicates the right to recover the damages upon the ground that because of "the failure of the defendant to carry out its agreement to lend the plaintiffs the $2,000, it was placed beyond the power of plaintiffs to pay the purchase-money notes due and held by J. N. Dean, of December 1, 1919, 1920, and 1921, in the sum of $500 each, notwithstanding plaintiffs used diligence to raise the money with which to pay off and satisfy said notes; and by reason of the failure of plaintiffs to pay off said notes the owner and holder thereof exercised his option to declare all of said notes due and payable, and so notified plaintiffs, and in consequence there was nothing left for them to do other than to reconvey to J. N. Dean said land, which was done by the execution and delivery by plaintiffs of their deed in writing on the ——— day of November, 1921."

The appellant pleaded a general denial, and specially that it did not agree to lend money direct to appellees, but only to act as their agent to negotiate a loan for them if it could be done; and that it, acting in good faith, with diligent efforts, tried to negotiate and secure the loan, but was unable to do so, and so notified the appellees.

The case was tried before the court without a jury, and judgment was rendered in favor of the appellees.

The following findings of fact and conclusions of law were filed by the trial judge, viz.:

"First. I find that the plaintiff J. D. Sallas purchased of F. E. Marler and wife on or about February 9, 1920, 197⁴/₁₀ acres of land out of the Amy Weir League, situated in Houston county, Tex., about six miles west from the town of Lovelady, Tex., for a valuable consideration of $4,000, $1,500 of which was paid in cash by plaintiff J. D. Sallas, and he assuming the five outstanding vendor's lien notes in the sum of $500 each, given by F. E. Marler to J. N. Dean as part of the purchase price of said land, which was conveyed by the said J. N. Dean to the said F. E. Marler, and said notes being due and payable to the order of said J. N. Dean on or before December 1, 1919, 1920, 1921, 1922, and 1923, respectively, with 10 per cent. interest per annum from date until paid, and each of said notes retaining a vendor's lien on said land to secure same, and containing the further stipulation that failure to pay same at maturity, or any installment of interest due thereon, shall at the option or election of the holder or holders of said notes mature all of said notes; and the said F. E. Marler and wife, Hallie Marler, conveyed said land to plaintiff J. D. Sallas by their deed in writing on said date.

"Second. That at the time of the purchase of the said 197⁴/₁₀ acres of land, and for some time prior thereto, the plaintiff had in mind and contemplated borrowing money on said land to be used in the payment of the outstanding

purchase-money notes hereinbefore referred to, all of which facts were made known to the defendant before the purchase of said land by plaintiffs from F. E. Marler and wife, and J. S. French, agent of the defendant, assured plaintiff that the loan would be made by the defendant, and induced thereby the plaintiff J. D. Sallas purchased said land on the terms as hereinbefore stated.

"Third. That about February 9, 1920, the plaintiffs made direct application to the defendant for a loan of $2,000 on said land, and the defendant was made acquainted at that time of the purposes for which the plaintiffs wanted to borrow said money as hereinbefore stated, and said application was made on one of the printed forms furnished by the defendant, and the agent of defendant, J. S. French, inspected the land and approved said loan, and recommended the same to defendant; that thereafter plaintiffs furnished the defendant abstract of title to said land, showing a good and marketable title. and the defendant accepted and approved said loan, and caused the plaintiffs to execute all necessary papers, including deeds of trust, bond, and notes, and to have same placed of record among the deed records of Houston county, Tex., at their own expense, and met all objections urged by defendant's attorneys to the title to said land, and complied with all of the other requirements of the defendant; that for some reason unexplained the defendant failed and refused to lend the plaintiff the $2,000, and during the fall of 1921 for the first time so notified the plaintiff J. D. Sallas.

"Fourth. I find that after the breach of the contract by defendant to lend plaintiffs the $2,000, the plaintiffs used diligence to sell said land and raise money with which to pay off and satisfy the purchase-money notes held by J. N. Dean, maturing in December, 1919, 1920, and 1921, together with the interest due on the other notes, but on account of the depressed financial conditions the plaintiffs could not sell said land, notwithstanding they used every effort and all necessary means at hand to do so; that failure to raise said money to satisfy said notes maturing in December, 1919, 1920, and 1921, held by J. N. Dean, together with interest on all the other notes held by him, the said J. N. Dean exercised the option of declaring all of said purchase-money notes due and payable, and so notified plaintiff J. D. Sallas; that plaintiffs could not raise the money with which to pay off said notes, together with interest, and nothing remained for them to do except to reconvey to said J. N. Dean, which was done by the execution and delivery by plaintiffs of their deed in writing conveying to J. N. Dean said land on November —, 1921.

"Fifth. I find that plaintiffs paid F. E. Marler and wife $1,450 as a cash payment, or the equivalent thereof, on the purchase price of said land, which was a total loss to them.

"Sixth. I find that J. N. Dean agreed with plaintiff J. D. Sallas that, if he would secure a loan from defendant of $2,000, and pay same over to him, he (Dean) would consent and assign the notes held by him against the land to the amount so paid him, and waive his lien on said land to that extent, and take and hold a second lien on the land for the remainder due him on said notes, together with the interest thereon.

## "Conclusions of Law.

"I conclude as a matter of law that the plaintiffs are entitled to judgment against the defendant for their damages in the sum of $1,450, with interest thereon at the rate of 6 per cent. per annum from date."

The evidence shows that J. S. French was the local agent representing appellant to solicit and take applications for loans and forward them to the general office of appellant at Oklahoma City, Okl., for approval, and to inspect and make report of the land offered as security for a loan by the proposed borrower, but J. S. French did not have authority to approve and accept the security offered, nor to actually make a loan for appellant, nor to "assure plaintiffs that a loan would be made by defendant." The appellant offered in evidence a blank form of application for loan, claiming that appellees executed one in that form, wherein the appellant was appointed "my agent to procure me a loan." The appellee Sallas denied signing that application, or any application appointing appellant "as agent" to negotiate a loan. The original application signed by appellees does not appear in this record.

The appellant was chartered under the laws of Oklahoma "to loan money on real estate in the state of Oklahoma and in any other state of the United States, and to take mortgages on real estate for the security of all its loans in the corporate name of the company; to negotiate, sell and assign said mortgage securities or any other securities held by the company; to buy real estate when it shall be necessary to do so in order to preserve its security or collect debts owing to it."

A permit to do business in Texas was granted by the secretary of state on July 27, 1915. The permit is "to loan money on real estate in the state of Texas, and" further reciting the terms of the charter.

Appellant finally accepted the title to the land, as shown by the abstract, in May, 1921, and the loan was finally agreed upon then, and the money to be made payable to appellees by means of a draft at that time. The appellant at the time of acceptance of the title was in possession of a deed of trust on the land, executed by appellees, and duly registered, to secure the $2,000 and interest thereon, and a note signed by appellees for $2,000, bearing 7 per cent. interest, payable to appellant on February 1, 1931. Appellees relied upon the promise of appellant to make the loan and to send them the money agreed upon. On September 1, 1921, the appellant for the first time notified the appellees that the money would not be sent them, but no reasons appear to be given for such failure or refusal. J. N. Dean, the holder of the vendor's lien notes, in the latter part of August, 1921, just before the notice of refusal was sent by appellant to appellees, notified appellees that he would no longer extend

payment of the notes, and would proceed to foreclose the lien. J. N. Dean, the owner 'and holder of the vendor's lien notes, had agreed with the appellees in February, 1920, to extend the time of payment of the vendor's lien notes and not to foreclose the lien, from February, 1920, until the application of appellees for the loan was accepted or reject-ed by appellant. On the notice from appellant of refusal to send the money the appellees immediately wrote appellant asking for return of the deed of trust and note and for a written release of the deed of trust for record. The appellant declined to return and release the lien, claiming an expense account was due to it by appellees. As a consequence of the failure to have a . written cancellation and release of the deed of trust, the appellees were unable to make a sale of the land or to obtain money elsewhere to pay on the vendor's lien indebtedness. The value of the land was shown to be the same in November, 1921, as in February, 1920.

Pearson & Baird, of Oklahoma City, Okl., and Aldrich & Crook, of Crockett, for appellant.

Nunn & Nunn, of Crockett, for appellees.

LEVY, J. (after stating the facts as above). [1] The agreement between the parties in this case, as determined by the court, was to the effect that the appellant, fully knowing the purpose of the loan, was to presently advance appellees, the landowners, $2,000 by way of a loan, with extended time of repayment, to pay certain vendor's lien notes then subsisting on the land to enable the appellees to comply with a special agreement with the lienholder respecting payment of the notes at a stated time. The appellees, by the agreement, were to execute, as they did, a mortgage on the land to appellant to secure the money advanced, to be evidenced by their note drawing 7 per cent. interest annually, and payable to appellant on February 1, 1931. This finding operates to be a finding of fact that the agreement between the parties was not that appellant, as claimed by it, was to lend the money to appellees upon condition that appellant could "sell and assign said mortgage security" given by appellees to it and thereby procure the money. Since the court's finding of fact is warranted by the evidence, the contention to the contrary is overruled.

[2, 3] The further propositions stated in appellant's brief, based on assignments of error, present in effect the two questions in view, viz.: (1) That on the breach of a contract to lend money to take up vendor's lien notes then due and payable, the landowner can legally recover only nominal damages; and (2) that the award, as damages, as made by the court, of $1,450, with interest thereon from date at the rate of 6 per cent. per annum," as being "the purchase price of the land, paid in cash," is legally erroneous, as the measure of liability; and there is an insufficiency of evidence to support any recovery of that character of damages. The point made by the appellant will be considered, of course, upon the special facts of this case. As a general rule, the law allows all damages which may reasonably be presumed to have been within the contemplation of the parties when they made the contract. Accordingly, if special circumstances, out of the usual course of things, are known to both parties, and it appears as an established fact that they contracted with reference thereto, the damages which follow the breach and are occasioned by such special course of things must be awarded to the party not in default, as compensation. 1 Southerland on Damages, § 45; Equitable Mortgage Co. v. Thorn (Tex. Civ. App.) 26 S. W. 276. And as applied to liability for damages for nonpayment or failure to advance money, being under contract to do so, the rule so stated has application, but only to a limited extent, and not broadly, according to special circumstances. Generally, under ordinary circumstances, damages for nonpayment of money, or for breach of a contract to lend money to pay an incumbrance, shall not exceed nominal damages, or the difference, if any, between the interest contracted to be paid and that which the borrower was compelled to pay to procure the money elsewhere. 1 Southerland on Damages, § 76; 8 R. C. L. § 31, p. 464, and reported cases. The reason of the rule, under such ordinary circumstances, is, quoting:

"The obligation is in fact but a promise to deliver so many dollars, and money is, in contemplation of law, always in the market and procurable at the lawful rate of interest."

[4] But, where the obligation to pay or lend the money is special, as where it is agreed to be done specially to take up and discharge liens on land, damages beyond nominal damages, according to actual injury, may be recovered. 1 Southerland on Damages, § 77; 17 C. J. § 177, p. 863; 8 R. C. L. § 31, p. 464; Equitable Mortgage Co. v. Thorn (Tex. Civ. App.) 26 S. W. 276; Anderson v. Hilton & Dodge Lumber Co., 121 Ga. 688, 49 S. E. 725. Quoting from the case of Thorn, supra:

"Where a person agrees to make a loan to another if the title to land offered as security is perfected, and the latter, being induced thereby, complies with the requirements, he may, on breach of the agreement, recover such damages as were caused by the breach, and which might be supposed to have entered into the contemplation of the parties."

[5] And the value of the land at the time the title was lost, with legal interest from that date, may be recovered, where the facts alleged and proven show such loss to have been occasioned solely by the refusal, or negligent conduct, of the one who was to

lend the money to discharge the indebtedness and incumbrance on the land, having notice at the time of the agreement to lend the money of the immediate purpose and necessity therefor. Western Union Tel. Co. v. Hearne, 7 Tex. Civ. App. 67, 26 S. W. 478; Equitable Mortgage Co. v. Thorn (Tex. Civ. App.) 26 S. W. 276; Lowe v. Turpie, 147 Ind. 652, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 233. The principle of these cases rests upon the fact that the landowner had an agreement with the lienholder to extend the time of and to wait for payment of the incumbrance until a stated time, and by the negligent conduct of the lender in refusing to lend the money and in failing to inform the landowner at the proper time that he would not provide the money the landowner was deprived of the benefit of his contract with the lienholder, causing loss of the title to the land. The principle followed and applied in the Thorn Case, supra, has application, we think, to the present appeal in the special facts. There is a special state of facts here conclusively showing that appellant by its acts and conduct is immediately responsible for the loss of the title of appellees' land, rendering appellant legally liable for the consequential damages. The special facts show that the appellees had an express agreement with the holder of the vendor's lien notes to delay foreclosure of the lien for a stated time; that the lienholder was unwilling to defer foreclosure longer than that period of time; that the appellant had knowledge of such facts; that the appellant agreed in May, 1921, to lend the money to pay on the vendor's lien notes, and the time of the actual loan was contemplated to be made presently from that date; that the appellees relied upon the promise of the appellant to make the loan, and were led to believe that it would be made and the money sent, as agreed; that the appellees had complied with all the required stipulations to perfect the loan; that the appellant, after agreement to make the loan, failed and refused to carry out the agreement, and failed and neglected to notify the appellees of its refusal, without any excuse for such failure, until September, 1921, about four months after the money should have been forwarded, which was, as a matter of law, an unreasonable delay; that the appellant, after the notification of refusal, and upon immediate request of appellees therefor, refused to execute a deed of release of the deed of trust executed and placed of record by appellees to it; that by reasons of the breach of the agreement to lend the money and the negligent acts and conduct of the appellant, together and entire, the appellees were unable to comply with their agreement with the holder of the vendor's lien notes, and thereby lost the title to their land. In such facts the acts of the appellant were the immediate, and not remote, cause of the loss of the title to the land.

[6] There is involved in the court's findings of fact a finding of special damages suffered by appellees. The finding is that the appellees suffered the loss of "$1,450 as a cash payment on the purchase price of said land." The land was purchased, it appears, by appellees on February 9, 1920, and the title was lost to them by their reconveyance in November, 1921, more than a year and a half after the original purchase by them. Were the appellees entitled, as a matter of law, to recover the "cash payment on the purchase price of the land," made at the time of original purchase? It is to be observed in the reported cases that the full value of the land is not allowable to be recovered by the landowner in all cases, independent of the indebtedness as an incumbrance against it. It is only "the actual loss" in the given case that can be recovered by the landowner. That measures the amount of his damages. Where there is a lien indebtedness against the land the indebtedness must be taken into consideration in determining the amount of "actual loss" the landowner sustained at the time the title was lost. The landowner, owing such lien indebtedness, must pay it, and is bound to pay it. He is not legally relieved of its final payment by the mere act of the party defaulting in lending the money to discharge the lien indebtedness. Consequently, in such cases, the measure of liability is the difference in the lien indebtedness, principal and interest, and the value of the land at the time it is lost by reason of foreclosure of such lien. It is the landowner's interest in the land, represented by the value of his equity, that he would be entitled to as compensation. For legally the value of the equity is his only "actual loss." The value of the equity is not measured, as a matter of law, by the amount of the purchase price paid in cash for the land in the first instance. The value of this equity must appear and be established at the time the title is lost. For the value of the equity at the time the title is lost may or may not be the same as at the time of the original purchase by the landowner. The market value of land rises and decreases, according to conditions and circumstances. If the market value of land goes below the original purchase price paid, the value of the equity would consequently be less. And, on the other hand, the value of the equity would be greater if the market value of the land should be greater than the original purchase price paid. In either event the landowner could recover the value of his equity, and no more. Hence in this case it devolved upon the appellees to affirmatively show the value of the land at the time the title was lost in November, 1921. This they have done. The land, as appellees Sallas testified, was of the same market value at

the time of the deed to J. N. Dean in November, 1921, as at the date of the purchase in February, 1920. There is evidence that the appellees cleared and fenced 12 acres of the land, renewed the other fences, and built permanent improvements. In the evidence the court's finding as to special damages should be construed as intending to fix the value of the equity at the amount of money so found by him. The assignments, we think, should be overruled.

The judgment is affirmed.

### On Motion for Rehearing.

[7] The appellant urges that in overruling the third and fourth propositions in the brief the decision is in direct conflict with the ruling on the identical propositions in the companion case of F. B. Collins Investment Co. v. Mills et ux., 254 S. W. 999. Had the facts of the two cases, relative to the propositions, been the same, the case cited would have controlled and been decisive of the ruling. But the facts do not appear the same. In the Mills Case, supra, there appeared in evidence the application of Mr. Mills for the loan, and which, as the opinion recites, "the appellee Mills admitted that he signed in manner and form as given." Of course, in such facts, the terms of the written instrument could not be varied or contradicted by oral evidence, in the absence of fraud, accident, or mistake. However, in the instant appeal the original application for the loan was not offered in evidence. There does not appear in the record any explanation of its absence on the trial. A form of application claimed to be a copy was exhibited in evidence, but the appellee in respect thereto testified:

"The application I made to the F. B. Collins Investment Company was dated February, 1920. It was not in February, 1921. I am sure of that. This is not my signature to this application. I do not know whose it is. It is my name; I do not know who signed it. I did not. I did sign an application for this loan in February, 1920. This is not the application that I signed. This application purports to be February 25, 1921. The facts in this application is not a true copy of the facts that I stated in the original application."

This testimony was not disputed, and the purported copy was not further proven or identified, and does not appear in the record. In the absence of the original application or legal proof of its contents, this court cannot determine, especially in the record, that the oral testimony of the appellee, as complained of, did vary or even tend to vary the original written terms of contract. Neither the bill of exception nor the statement of facts so shows.

The motion is in all things overruled.